Betty L. VARNEY, Plaintiff–Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant–Appellee.

No. 87–6075.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 11, 1987.[*]

Decided May 16, 1988.

Steven L. Whiteside, Law Offices of Edmund Parent, Santa Barbara, Cal., for plaintiff-appellant.

---

[*] The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

582

Nancy E. Wever, Asst. Regional Counsel, Dept. of Health and Human Services, San Francisco, Cal., for defendant-appellee.

Before BROWNING, Chief Judge, HUG, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Betty Varney appeals from the district court's judgment affirming the decision of the Secretary of Health and Human Services to deny her application for Social Security disability benefits. We reverse the district court's decision and remand Varney's case for further proceedings.

## FACTS AND PROCEEDINGS BELOW

The claimant, Betty Varney, was born in 1932. She has a high school equivalency degree and worked at a variety of unskilled and semi-skilled jobs until December 1981, when she suffered a heart attack. She underwent triple coronary bypass surgery in February 1982, and shortly afterward sustained a second heart attack. In April 1982, her treating cardiologist indicated that Varney was totally and permanently disabled as a result of her heart condition. In August 1983, a neurologist who examined Varney on several occasions agreed that she was "totally disabled because of the heart problem."

Varney was in an automobile accident in July 1982 and sustained injuries to her back and neck. Her treating orthopedic specialists subsequently diagnosed her as suffering from chronic neck and lower back strain. Her other complaints include hypertension, frequent headaches, and chronic bronchitis. Varney has not worked since December 1981.

Varney applied for Social Security disability benefits in May 1983, claiming a disability onset date of December 31, 1981.[1] Her application was denied initially and on reconsideration. Varney then requested a hearing, which was held before an Administrative Law Judge ("ALJ") on October 15, 1984. At the hearing, Varney testified that she experienced constant lower back pain and constant headaches.[2] She stated that thirty to forty minutes of light housework would bring on extreme fatigue and chest pains, and that on at least four to five days every month she was too tired to leave her house. She also testified that her legs became very painful after walking two or three blocks; that she could neither sit nor stand for extended periods without becoming uncomfortable and that she was not comfortable at all sitting in a straight chair; and that any lifting would cause chest pains.[3] Varney further testified that she was taking a range of medications that caused side effects ranging from fatigue to nausea, swollen ankles, diarrhea, and constipation.

Based on the medical evidence, the ALJ found that Varney suffered from cardiac artery disease, aftereffects of two myocardial infarctions and cardiac bypass surgery, hypertension, chronic cervical and lumbar strain, and headaches; he also determined that she could not perform her past relevant work. However, he found that Varney could perform the full range of sedentary work and that the skills required for her previous jobs were transferable to available jobs that she remained capable of performing. Applying Rule 201.15 of the Medical Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1987) (the "grids"), the ALJ concluded that Varney was not disabled. In drawing this conclusion, the ALJ found that Varney's pain

1. Varney had applied for disability benefits in April 1982 and was turned down; she did not appeal that denial. The government apparently does not contend that Varney's previous denial should affect the outcome of this appeal.

2. Varney wears a back brace to provide some relief from her pain, and testified that she has also used a transcutaneous nerve stimulator.

3. The record also indicates that Varney complained of persistent pain to her treating cardiologist and orthopedic specialists on several occasions.

testimony was "exaggerated over what is corroborated by the weight of the objective medical evidence" and was not credible. He also found that her treating physicians' opinions that Varney was completely disabled were contradicted by the medical evidence and by the evidence concerning economic and social factors.

Varney appealed the denial of benefits to the district court pursuant to 42 U.S.C. § 405(g) (1982); the court granted summary judgment for the Secretary. Varney timely appeals under 42 U.S.C. § 405(g) (1982).

## DISCUSSION

### I. *Adequacy of Transcript*

■ Varney contends first that her case should be remanded for another hearing because the record is not adequate for review. Specifically, she points out that the first 260 units of the tape of the October 15, 1984, hearing could not be transcribed at all and that there are 26 passages in the transcript marked "inaudible." The district court relied on *McGlone v. Heckler*, 791 F.2d 1119 (4th Cir.1986), in holding that Varney had the responsibility of showing that material evidence was missing from the record, and that she had failed to make such a showing. Varney asserts that *McGlone* improperly places the burden of producing a complete record on the claimant rather than the Secretary. She argues that the proper test is whether the record is adequate to allow judicial review, *see Ward v. Heckler*, 786 F.2d 844, 848 (8th Cir.1986), and that the record in this case fails to meet that standard.

We need not decide which of these two standards is the more appropriate because under either one, Varney's argument fails. Varney admits that she was unable to make the showing required under *McGlone*. Moreover, we find this record sufficient to allow fair and thorough review. The portion of the hearing that is missing from the transcript is the first part of Varney's testimony; the transcribed portion of the hearing picks up Varney's testimony describing her medical history at the point where she was hospitalized following

her first heart attack. Varney's testimony as to her subjective symptoms and limitations, which follows her narration of her medical history, appears to be complete. The "inaudible" passages in the later parts of the transcript "appear very small.... Although distracting, the gaps [do] not interfere with comprehension of the testimony to an extent that would hinder fair review." *Ward*, 786 F.2d at 848. Accordingly, we do not believe remand is warranted on this ground.

### II. *Subjective Pain Testimony*

Varney argues next that the Secretary erred in failing to give reasons for finding Varney's pain testimony not credible, and that this error requires reversal. Varney is correct.

■ Varney bears the burden of proving that she is disabled; she must show "that a medically determinable physical or mental impairment prevents [her] from engaging in substantial gainful activity and that the impairment is expected to result in death or to last for a continuous period of at least 12 months." *Gamer v. Secretary of Health and Human Services*, 815 F.2d 1275, 1278 (9th Cir.1987). Once Varney establishes a prima facie case of disability by showing that a physical or mental impairment prevents her from engaging in her previous work, the burden shifts to the Secretary to show that there is other work Varney can do. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir.1986).

Pain can impose significant limitations on an individual's ability to engage in gainful activity. For this reason, we have consistently treated subjective pain testimony as an important factor in the disability determination process. *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir.1986); *Howard*, 782 F.2d at 1488. In order to be considered, subjective complaints of pain must be associated with medical impairments that "could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A) (Supp. III 1985); *see* 20 C.F.R. § 404.1529 (1987). In other words, subjective complaints that are com-

pletely unsubstantiated by *any* objective medical evidence may be disregarded. *Howard*, 782 F.2d at 1488. However, we have recognized that "pain is a highly idiosyncratic phenomenon, varying according to the pain threshold and stamina of the individual victim." *Id.* For this reason, we have never required a showing that a claimant's impairment would *inevitably* cause the pain described by the claimant. *Summers v. Bowen*, 813 F.2d 241, 242 (9th Cir.1987) (quoting *Howard*, 782 F.2d at 1488). Rather, we have held that pain testimony should be considered in the disability determination process "so long as the pain is *associated* with a clinically demonstrated impairment." *Howard*, 782 F.2d at 1488 n. 4 (emphasis in original); *see Green v. Heckler*, 803 F.2d 528, 532 (9th Cir.1986).

In some cases, a claimant may testify that he or she experiences pain that is associated with a medical impairment, but that the pain is greater than the impairment would normally be expected to produce. We have referred to such testimony as "excess pain testimony"—excess pain being "pain that is unsupported by objective medical findings." *Cotton*, 799 F.2d at 1407. While the Secretary may decide to disbelieve or disregard excess pain testimony, we have held repeatedly that such a decision must be supported by *specific findings*. *Gamer*, 815 F.2d at 1279; *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir.1986); *Green*, 803 F.2d at 532; *Cotton*, 799 F.2d at 1407.

The parameters of this specific finding requirement are not entirely clear. In some cases, we have upheld the Secretary's denial of benefits on the ground that the ALJ's findings were sufficiently specific, without detailing what those findings were. *See, e.g., Young v. Heckler*, 803 F.2d 963, 968 (9th Cir.1986) (ALJ "made specific findings discounting appellant's claims of disabling levels of lower back pain"); *Green*, 803 F.2d at 532 (reiterating specific finding and upholding Secretary's denial of benefits). But in other cases, we have held explicitly that the specific finding requirement is *not* satisfied if the ALJ discredits excess pain testimony solely on the ground that it is not fully corroborated by objective

medical evidence. *Gamer*, 815 F.2d at 1279; *Cotton*, 799 F.2d at 1407.

■ That is precisely what happened in Varney's case. The ALJ's finding as to Varney's pain testimony consists in its entirety of the following sentence: "The claimant's reports of subjective symptoms and limitations are exaggerated over what is corroborated by the weight of the objective medical evidence, and to this extent, her reports are not credible." Clearly, Varney suffers from several impairments—including heart disease and chronic neck and back strain—that can be expected to produce pain. Yet the ALJ gives no reason for disregarding Varney's pain testimony, other than the assertion that her subjective complaints are disproportionate to the medical evidence; nor does he isolate particular complaints of pain and discuss the evidence suggesting that those complaints are not credible. In this circuit, these omissions are improper as a matter of law; they require that we reverse the ALJ's decision and remand for further proceedings. The ALJ must either accept Varney's testimony or make specific findings rejecting it. Any specific findings must, of course, be supported by the record and will be subject to further review by the courts. *Gamer*, 815 F.2d at 1279; *Cotton*, 799 F.2d at 1407–08.

Several conclusions follow from our finding that the ALJ did not properly consider Varney's subjective complaints. *See Cotton*, 799 F.2d at 1408 n. 5. First, the ALJ's finding that Varney retains the residual functional capacity to perform the full range of sedentary work cannot survive. Sedentary work involves lifting up to ten pounds at a time as well as lifting and carrying small objects; it is defined as work that involves sitting, although walking and standing may be required occasionally. 20 C.F.R. § 404.1567(a) (1987). Yet Varney testified that *any* lifting brings on chest pains; that she feels uncomfortable sitting for long periods or sitting in a straight chair for any period; and that she is too fatigued to leave her house four or five days out of each month. This testimony indicates that, contrary to the ALJ's conclusion, Varney could not perform the

full range of sedentary work. *See Cotton,* 799 F.2d at 1408 n. 5.

Second, in finding that Varney has skills she can apply to jobs which exist in significant numbers in the national economy, the ALJ relied on an answer of a vocational expert to a hypothetical question posed by the ALJ. The question envisioned a claimant of Varney's age, education, and job skills who was "limited to sedentary exertion." Yet we have held that a hypothetical must set forth *all* of a claimant's impairments—specifically including pain—in order for the vocational expert's testimony to have any value. *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir.1984); *see Gamer,* 815 F.2d at 1280 (pain should have formed part of hypothetical). Indeed, when Varney's attorney followed the procedure we suggested in *Gamer* and amended the hypothetical question to include two previous heart attacks, chest pain, inability to sit for more than one to two hours at a time, and severe fatigue five days out of each month, the vocational expert indicated that such an individual would *not* be able to perform any of the jobs the expert had previously specified in response to the ALJ's hypothetical. Because it did not account for Varney's claimed conditions, the answer of the vocational expert upon which the ALJ relied has no evidentiary value and cannot help the Secretary meet his burden of showing that Varney can engage in other work. For this reason alone we would be required to remand for reconsideration. *Gamer,* 815 F.2d at 1280.

Third, we have noted that the grids "describe only 'major functional and vocational patterns.'" *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir.1984) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a)). If the grids fail to describe a claimant's particular limitations, then the Secretary cannot rely on the grids alone to show that the claimant has jobs available. *Id.* at 1457. Since the vocational expert's testimony must be discounted, the Secretary in effect relied exclusively on the grids. Yet the grids make no provision for the fact that Varney's pain restricts her ability to work. Therefore "the ALJ erred by relying exclusively on the grids and not taking account

of [Varney's] significant nonexertional limitations." *Cotton,* 799 F.2d at 1408 n. 5.

### III. *Side Effects of Medications*

Varney testified that she takes several different kinds of medication, primarily for her heart condition and high blood pressure. As already noted, she testified that she experiences fairly severe side effects from those medications. She indicated that she reported those side effects to two of her doctors, and they told her that she needed the medications and that the side effects were unavoidable.

The ALJ noted that Varney takes various medications and acknowledged her testimony as to their side effects. He did not, however, make any findings with regard to the side effects; he did not ask the medical expert who testified at the hearing about the side effects that could reasonably be expected from Varney's medications; he did not consider the impact of the side effects on Varney's ability to work, or include them as a limitation in his hypothetical question to the vocational expert; and he gave no reason—beyond the general finding discrediting Varney's "reports of subjective symptoms and limitations"—for disregarding Varney's testimony on this issue.

Like pain, the side effects of medications can have a significant impact on an individual's ability to work and should figure in the disability determination process. *Cf. Howard,* 782 F.2d at 1488. Also like pain, side effects can be a "highly idiosyncratic phenomenon" and a claimant's testimony as to their limiting effects should not be trivialized. *Cf. id.* Therefore, if the Secretary chooses to disregard a claimant's testimony as to the subjective limitations of side effects, he must support that decision with specific findings similar to those required for excess pain testimony, as long as the side effects are in fact associated with the claimant's medication(s). *Cf. Cotton,* 799 F.2d at 1407; *see also Figueroa v. Secretary of Health, Education and Welfare,* 585 F.2d 551, 554 (1st Cir.1978) (ALJ must make finding on appellant's claim re-

garding side effects of medication). Because no such findings were made here, we remand the matter so that, as in the case of the pain testimony, the ALJ may either accept Varney's evidence regarding side effects or make specific findings rejecting such evidence. Again, any specific findings rejecting her testimony must be supported by the record and will be subject to further review by the courts.

## CONCLUSION

We reverse the district court's grant of summary judgment and remand the case with directions to remand to the Secretary for further proceedings consistent with this opinion.