**Vera P. ORR, Plaintiff,**

v.

**Louis SULLIVAN, M.D., Secretary of Health & Human Services, Defendant.**

**Civ. No. 91–1223–FR.**

United States District Court, D. Oregon.

June 29, 1992.

Donald V. Reeder, Madras, Or., for plaintiff.

Charles H. Turner, U.S. Atty., Craig J. Casey, Asst. U.S. Atty., Portland, Or., Kathryn A. Warma, Sp. Asst. U.S. Atty., Seattle, Wash., for defendant.

## OPINION

FRYE, Judge:

Plaintiff, Vera P. Orr, brought this action pursuant to Section 205(g) of the Social Security Act (the Act), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Secretary of Health and Human Services (the Secretary), denying Orr's application for disability insurance and Supplemental Security Income (SSI) benefits for the period beginning in June of 1989.

## BACKGROUND

Orr filed an application for SSI and Social Security disability benefits on June 12, 1989, alleging that she became disabled on June 21, 1988 due to high blood pressure, diabetes, and "toe with gangrene." The application was denied initially and upon reconsideration. Thereafter, a hearing was held before an Administrative Law Judge (the ALJ), who issued an opinion on January 24, 1991 denying both disability insurance benefits under sections 216(i) and 223 of the Act and SSI benefits under sections 1602 and 1614(a)(3)(A) of the Act.

Upon review by the Appeals Council, on September 24, 1991, the decision of the ALJ was affirmed. Orr then filed this action.

## FACTS

Orr was born on July 14, 1926. At the time of her alleged onset of disability, in June of 1988, she was 61 years old. She has no significant training beyond the ninth grade. Her past relevant work history includes work as a homemaker, general houseworker, and "informal waitress."[1]

Orr alleges that her disability began when she stubbed her second toe, and the resulting blood blister developed into an ulcer in June of 1988. The ulcer came about because of her neuropathy and diabetes which causes reduced blood flow in her feet. Dr. Ambrose K. Su, the primary treating physician for her toe condition, recommended that Orr be on her feet as little as possible during the healing process, which he said would range from three to six months. On September 23, 1989, Dr. Su noted that her toe was healing well. She was scheduled for a return appointment which she did not make. Dr. Su stated that Orr should have no functional limitations after the toe healed.

Orr has a history of diabetes mellitus, Type II, dating back to 1977. Though her diabetes has been poorly controlled in the past, on July 10, 1989, Dr. Richard Ettinger, her treating physician, noted that her diabetes was in good control. Her aging has been accelerated, and she is at greater risk from complications of cardiac, arterial or renal causes because of her diabetes.

Her diabetes has caused peripheral neuropathy, which Orr contends results in occasional numbness in her hands and feet. In an examination in March of 1989, Dr. Ettinger could not detect pulses in her lower extremities. He diagnosed peripheral vascular occlusive disease in her lower extremities. He did not detect any deficit as to touch, vibratory or T sense in her hands.

Orr has also had a history of back pain. She was involved in a motor vehicle accident in January of 1983 and has repeatedly complained of mid-lumbar pain since that time. During her administrative hearing, she testified that she had experienced back pain during her previous employment when she performed strenuous work, such as mopping floors or lifting heavy objects, and that driving in the car for long periods and even sleeping could be very painful. T–35. She also testified that light tasks, such as laundry and making her bed, did not result in back pain, and that her back did not hurt during the entire hour she was on the stand testifying at the hearing.

In 1987 and 1988, Orr was treated for urinary tract infections, acute pyelonephritis (inflammation of the kidney due to bacterial infection), with vomiting, non-insulin dependent diabetes mellitus, hypertension, and obesity. In a letter dated October 7, 1988, Dr. George Waldmann, reported that Orr had no evidence of toe gangrene, that the acute pyelonephritis condition was resolving as of August 17, 1988, and that she had no functional limitations based on objective findings related to these various conditions.

In October of 1988, Orr was examined by Janet Bissell, R.N. of the Oregon State Department of Health and Human Services to determine whether or not Orr was disabled. Nurse Bissell stated that "[i]t appears that the patient's diabetes and obesity are affecting her general health.... I feel her age and unresolved complaints make her an unlikely employable person." T–128.

In March of 1989, Orr again was examined after complaining of profound weakness, numbness and tingling, and weakness in her fingers and legs, tension type headaches, and back pain. T–285. A zone of dense sclerosis posteriorly at L–4 and L–5 was found, most likely related to advanced posterior element degenerative changes; however, Orr's medication was adjusted, and on April 10, 1989, Dr. Ettinger report-

---

**1.** For approximately one year, Orr helped out as needed at a hamburger drive-in, usually only working about three hours a day.

ed that she was feeling better, and that her back pain had lessened and was "particularly improved with walking." T–291. On April 20, 1989, Dr. Ettinger provided a letter for Orr's disability case, indicating that her current diagnoses were diabetes mellitus, poorly controlled with oral medication; hypertensive cardiovascular disease; peripheral vascular occlusive disease; hyperlipidemia; and chronic lumbar strain. T–293. He added that "it is extremely unlikely that this 62 year old woman with multiple medical problems is able to be employable for physical work." *Id.*

In April of 1990, Orr was examined for vocational rehabilitation by Douglas Lieuallen, M.D. T–298–300. At that time, she reported "generally feeling well," though she complained of pain in her neck and back and also of chronic numbness and coldness in her feet. *Id.* Dr. Lieuallen, after a clinical examination and viewing x-rays taken by Dr. Ettinger, diagnosed Orr as having degenerative arthritis, primarily in the cervical and lumbar spine with symptoms out of proportion to the degree of physical and radiographic findings; diabetic polyneuropathy; hypertension; and obesity. T–300.

The ALJ concluded that:

> Ms. Orr retains the functional capacity to perform work other than that requiring lifting, carrying, pushing or pulling weight above the light exertion level, more than occasional climbing, and involving exposure to extremes of cold temperatures or humidity. Based on that residual functional capacity, [she can] perform her past relevant work as a homemaker, general house worker and informal waitress.

ALJ Decision, p. 9 (T–19).

## STANDARD OF REVIEW

■■■ The Secretary's final decision denying benefits will be disturbed only if it is not supported by substantial evidence or is based on legal error. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir.1986). The court reviews the record as a whole, weighing both the evidence that supports and detracts from the Secretary's conclusion. *Id.*

at 772. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Nyman v. Heckler*, 779 F.2d 528, 530 (9th Cir.1985).

## ANALYSIS

■■■ The sole issue present before the court is whether there is substantial evidence to support the conclusion of the Secretary that Orr was not disabled within the meaning of the Act due to the effects of diabetes mellitus, back problems, obesity, hypertension, or any other impairment demonstrated in the record or alleged at the administrative hearing. The burden of proof rests upon Orr to establish her entitlement to disability benefits. To meet this burden, she must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The court has reviewed the record in this case and concludes that there is substantial evidence to support the ALJ's findings that "[t]he claimant's impairments do not prevent the claimant from performing her past relevant work activity," and that "[t]he claimant was not under a 'disability' as defined in the Act at any time through the date of this decision." ALJ Decision, p. 10 (T–20).

Orr asserts that her back pain, dizziness, diabetes, and numbness in her hands and feet constitute substantial evidence and prove that she is unable to engage in any substantial gainful employment. Orr stated at the hearing that she is unable to perform past relevant work as a homemaker, general houseworker, and informal waitress. T–20. She contends that she cannot mop a floor because of the pain in her back; she cannot lift objects; and she becomes fatigued easily due to her diabetic condition. T–35–36. She testified to numbness in her hands, which occasionally causes her to drop things. She also testified that she can make her bed and do laundry with no back pain.

Orr argues 1) that the ALJ neither considered her subjective testimony of pain at the hearing, nor the testimony of her daughter, Sharon Orr, supporting those statements; and 2) that her advanced age was not taken into account pursuant to 20 C.F.R. § 404.1563(d).

■ It is apparent from the record that Orr suffers daily from a variety of medical impairments, including back pain, hypertension, and the debilitating effects of diabetes. However, under 20 C.F.R. § 404.-1529(a), the determination of disability includes the consideration of subjective manifestations of pain only to the extent to which they are consistent with the objective medical evidence and other evidence, such as medical signs, laboratory findings, reports of treating or examining physicians and others about the medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how the impairments and any related symptoms affect the ability to work.

The examining physicians' reports support Orr's complaints of pain only to the extent that they establish that she is unsuited for any work beyond a light or sedentary exertion level. Dr. Ettinger's statement that she is unable to do "physical" work does not appear to mean that she is precluded from performing light or sedentary work. Such a diagnosis is consistent with the other medical evidence and reports of Dr. Lieuallen and Dr. Su that she has no functional limitations which should prevent her from working at light or sedentary tasks.

■ As stated above, subjective complaints of pain are only one of many considerations in the determination of disability:

[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms

which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. § 404.1529(a). Testimony of pain associated with clinically demonstrated impairments is only relevant if it is credible. *Howard v. Heckler,* 782 F.2d 1484, 1488 (9th Cir.1986). The Secretary may choose to disbelieve a claimant's pain testimony, so long as he makes specific findings justifying that decision. *Varney v. Secretary of Health and Human Servs.,* 846 F.2d 581, 584 (9th Cir.1988).

■ The ALJ detailed explicitly his reasons for disbelieving Orr's pain testimony at the administrative hearing:

Several allegations of impairment and functional limitations were raised for the first time at the hearing. Thus, the claimant alleged dizzy spells at least once a day, lasting for a few seconds. She alleged bending brings on dizziness. She also alleged having viral pneumonia in February 1990. She alleged temperature extremes causing difficulty in both breathing and of having neck pain. Following testimony from the impartial vocational expert later in the hearing, counsel questioned the claimant further in regard to her performance of daily activities. At that time the claimant asserted becoming sick without the performance of any activity as well as having to lie down when she became dizzy. In further contrast to earlier testimony, she noted becoming dizzy at any time and without having to do anything.

. . . .

If the claimant had mentioned to any treating or examining physician that she was experiencing the impairments or symptoms alleged at the hearing in regard to respiratory problems, dizziness and sickness, it is reasonable to infer that such allegations would be reported in treatment notes or reports in record [sic]. However, no such notations are present in the record and no posthearing evidence has been submitted corroborating the claimant's allegations. . . .

. . . .

Ms. Orr ... uses no prescription pain medication. She takes ... over-the-counter medication at night allegedly to treat her pain and cramping in her lower back and legs.... Dr. Lieuallen concluded Ms. Orr's pain symptoms were out of proportion to the underlying laboratory test results and clinical findings.... With regard to several alleged impairments, there is no medical evidence demonstrating an underlying physical basis for such allegations. Furthermore, while the claimant's daily activities appear limited to the sedentary exertional level, there is no basis on this record to assume such limitation is attributable to any underlying medical conditions....

It is abundantly clear Ms. Orr performed work activity at substantial gainful activity levels as a homemaker until June 1988 when she injured her toe, not quitting work for any other reason.

ALJ Decision, pp. 7–8 (T–17–18) (citations to Exhibits omitted).

With regard to Orr's advanced age, the Code of Federal Regulations states, in pertinent part:

We consider that advanced age (55 or over) is the point where age significantly affects a person's ability to do substantial gainful activity. If you are severely impaired and of advanced age and you cannot do medium work ... you may not be able to work *unless you have skills that can be used in (transferred to) less demanding jobs which exist in significant numbers in the national economy.* If you are close to retirement age (60–64) and have a severe impairment, we will not consider you able to adjust to sedentary or light work unless you have skills which are highly marketable.

20 C.F.R. § 404.1563(d) (emphasis added).

The Residual Physical Functional Capacity Assessment, Exhibit 16, states that Orr has retained a functional capacity for light level work. T–162–69. The vocational expert, Richard Ridenour, stated at the administrative hearing that Orr's past work included jobs at both the medium and light exertion levels, and that she is still capable of working at her past jobs as a "home-maker-houseworker" and as an informal waitress. T–81–82. Ridenour also identified other positions for which she was qualified and which would not be too demanding on her physically, such as an information clerk or an order clerk.

Though Orr is close to retirement age, her impairments are not severe. According to the vocational expert, she can still do the light work for which she is trained; her skills are highly marketable; and jobs for which she is qualified are available in significant numbers in the national economy. As the ALJ states:

Ms. Orr retains the functional capacity to perform work other than that requiring lifting, carrying, pushing or pulling weight above the light exertion level, more than occasional climbing, and involving exposure to extremes of cold temperatures or humidity. Based on that residual functional capacity, the impartial vocational expert, Richard Ridenour, testified Ms. Orr could perform her past relevant work as a homemaker, general house worker and informal waitress....

Were the claimant incapable of performing any of her past relevant work activity, [she] possesses skills transferable to other jobs present in significant numbers in the regional and national economy requiring very little, if any, vocational adjustment in terms of tools, work processes, work settings or the industry.... Jobs falling within Ms. Orr's residual functional capacity to which she could transfer such skills consist[ ] of semi-skilled work activity as a home companion.

ALJ Decision, p. 9 (T–19).

## CONCLUSION

This court finds that there is substantial evidence to support the ALJ's conclusion that Orr was not under a "disability" as defined in the Act at any time through the date of the ALJ's decision and therefore is not entitled to disability benefits under the Act. Her subjective complaints of pain are not reflected by the objective medical evidence and reports of the examining physi-

cians as required by 20 C.F.R. § 404.1529, and her residual functional capacity level is sufficient to allow her to continue employment in those positions for which she is trained or to transfer her skills to another position, such as an in-home companion.

The decision of the Secretary that Orr is not "disabled" is affirmed. Judgment will be entered for the defendant.