Betty J. **DODRILL**, Plaintiff–Appellant,

v.

Donna **SHALALA**,[*] Secretary of Health and Human Services, Defendant–Appellee.

No. 92–35445.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 14, 1993 [**].

Decided Dec. 28, 1993.

---

[*] Donna Shalala has been substituted for her predecessor in office, Louis W. Sullivan, pursuant to Federal Rule of Appellate Procedure 43(c)(1).

[**] The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App.P. 34(a); 9th Cir.R. 34–4.

Elie Halpern, Olympia, WA, for plaintiff-appellant.

Richard H. Wetmore, Dept. of Health & Human Services, Seattle, WA, William H. Rubidge, Asst. U.S. Atty., Tacoma, WA, for defendant-appellee.

Appeal from the United States District Court for the Western District of Washington, Robert J. Bryan, District Judge, Presiding.

Before: GOODWIN, CANBY and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge:

Dodrill appeals from a denial of disability insurance benefits under Title II of the Social Security Act. The administrative law judge upheld the Secretary of Health and Human Services' finding that Dodrill was not disabled; a timely request for review was declined by the Appeals Council. Dodrill appealed this final administrative ruling to the district court pursuant to 42 U.S.C. § 405(g), and we review that court's grant of summary judgment to the Secretary.

Claims of disability are evaluated under the five-step procedure of 20 C.F.R. §§ 404.-1520 et seq., 416.920 et seq. (1986). This case was resolved at step four where the Secretary must determine whether the claimant retains sufficient residual capacity to perform her past work. If the Secretary finds that the claimant does, she is not considered disabled and is not eligible for benefits. We consider whether the Secretary's finding that Dodrill could perform her past work was supported by substantial evidence and was free of legal error. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir.1989).

## I. Subjective Pain Testimony

The ALJ is not required to believe pain testimony and may disregard it if there are no objective medical findings which "could reasonably be expected to cause *some* pain." *Id.* If he rejects it, however, he must justify his decision with specific findings. *Id.* at 602.

Here, Dodrill testified to "a real bad problem with breathing. If I move around or do any exercise at all, I, I get completely out of breath and have to use my breathalizer." CR 31. She also testified to "excruciating pain in my lower back and my right leg," *id.*, especially if she sits for any length of time or walks, CR 31, 34—a problem that generally prevents her from driving. CR 31. She claimed she's unable to do any household chores, ER 20; she can't bend over to get anything out of the dryer, dishwasher or cabinets, CR 35. She leaves the house approximately twice a month and otherwise appears only to sleep and take care of herself. CR 29–41, 143–149.

We have held such pain testimony "should be considered in the disability determination process 'so long as the pain is *associated* with a clinically demonstrated impairment.'" *Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir.1988), *rev'd on other grounds upon reh'g,* 859 F.2d 1396 (9th Cir.1988) (citation omitted). Here, there was evidence of such an impairment. Dr. Cummings, the consulting physician, reported "back pain syndrome ... quite convincing for some degree of disc disease with classicle [sic] sounding sciatica." ER 43. He "s[aw] no reason to doubt her account of pain, made especially worse by her obesity. This would certainly be disabling so far as she would be unable to heavy [sic] physical lifting or bending." ER 44. He also noted that Dodrill "relates a good story for exercise-induced asthma and chronic bronchitis" which "also would limit her ability to perform any physical work," *id.*, and suggested she could perform "clerical or other nonphysical activities." *Id.*

The ALJ nonetheless determined that Dodrill had the capacity to perform her past work as a business license inspector—a job that daily entailed two hours of walking, one hour of standing, approximately five hours of driving and frequent lifting of up to 25 pounds. ER 22. To reach this conclusion, the ALJ must have disbelieved Dodrill's testimony that she suffers "excruciating pain in [her] lower back and [her] right leg," CR 31, while sitting for any length of time or walking. The validity of the ALJ's finding against Dodrill depends on whether he artic-

ulated a sufficient basis for rejecting her pain testimony.

If there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the claimant was malingering, the Secretary's reason for rejecting the claimant's testimony must be "clear and convincing," *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir.1989), and supported by specific findings, *Varney,* 846 F.2d at 584. It's not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible. *Id.* He "must either accept [claimant's] testimony or make specific findings rejecting it." *Id.*

Here, the ALJ failed to make sufficient findings as to why he rejected the testimony of Dodrill and Dr. Cummings. He did note that Dodrill left her last job not because of medical necessity, but to follow her husband to the State of Washington when he retired, ER 20, and that her general condition "appears to be the same as when she was employed," ER 21. But beyond these observations, he merely repeated that there was little or nothing in the record to support Dodrill's claims of fatiguability, *id.,* severe pain, ER 19, exercise-induced asthma, ER 21, and limited activities, *id.* Despite Dr. Cummings's statement that Dodrill's pain was both convincing and proportional to her medical impairments, ER 43–44, the ALJ declared that there was no impairment "which could cause these subjective complaints of easy fatigue, low back and right leg pain, to the degree to which she alleges." ER 19.

This is not a finding sufficient to reject a claimant's testimony of debilitating pain. *Varney,* 846 F.2d at 584. If the ALJ wished to reject Dodrill's pain testimony, he was required to point to specific facts in the record which demonstrate that Dodrill is in less pain than she claims. *See, e.g., Fair,* 885 F.2d at 604 (claimant "remain[ed] capable of caring for all his own personal needs, the performance of his own routine household maintenance and shopping chores, riding public transportation, and driving his own automobile"). On remand, the ALJ must identify such facts or accept Dodrill's testimony.

## II. Lay Witness Testimony

Dodrill offered testimony of lay witnesses as to her physical condition. One daughter stated that Dodrill tires easily and takes periodic naps, does only minimal household chores, has great difficulty climbing stairs and can only ride in a car for a limited time before needing to stop and walk around. CR 143–44. Another daughter reiterated that Dodrill "[w]as unable to do even the most basic tasks. She can no longer shop, cook, or clean house. Even getting in and out of the car is an ordeal that requires help." CR 147. Dodrill's husband testified to a deterioration in her condition and to her inability to help with household chores. ER 27. A friend of 25 years wrote that Dodrill was lethargic, slept the entire afternoon and had difficulty riding in a car, ER 20. The ALJ acknowledged that the witnesses' descriptions may be accurate, ER 21, but appears to have discounted all of them because they were "based on the claimant's own assertions," and thus, "the conclusion that the claimant was not credible requires that the testimony and affidavits be rejected." ER 22.

If we follow the ALJ's reasoning, he dismissed the evidence of these lay witnesses because he believed that they were merely repeating Dodrill's complaints. That may have been the case as to some of the witnesses, such as her daughters, whose statements did not explain sufficiently when and to what extent they had the opportunity to observe their mother. Other witnesses, however, like Dodrill's husband, grandson and friend, clearly saw her on a frequent basis. The testimony of these witnesses could not be so easily disposed of.

Although eyewitnesses have to rely to some extent on communications with the claimant in ascertaining whether she is disabled or malingering, we have held that friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her

condition. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). "Disregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. § 404.-1513(e)(2)." *Id.*

That the ALJ dismissed all the lay witness testimony solely because he found the claimant was not credible suggests he may have been under the mistaken impression that lay witnesses can never make independent observations of the claimant's pain and other symptoms. As the authorities above suggest, that is not the case. An eyewitness can often tell whether someone is suffering or merely malingering. While this is particularly true of witnesses who view the claimant on a daily basis, the testimony of those who see the claimant less often still carries some weight. If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness.

### III. Failure to Lose Weight

According to 20 C.F.R. § 404.1530(a), (b) and § 416.930(a), (b) (1986), a claimant won't be found disabled if she refuses to follow prescribed medical treatment without good reason. The ALJ seems to have approached Dodrill's obesity and its secondary effects with this regulation in mind. Here, the ALJ paid considerable attention to the fact that Dodrill's obesity complicated, ER 21, if not caused some of her problems, ER 20. He observed that she had once lost significant weight and that "there is nothing to show that, through proper diet and some exercise, she would not be able to do so in the future." ER 21. He also noted that Dodrill had been told to exercise but claimed she was no longer able to because of her asthma. ER 20.

Without making a factual finding, the ALJ could not assume that Dodrill's obesity was remediable. The ALJ relied only on the fact that Dodrill had lost weight in the past, but the fact that she couldn't keep the weight off suggests the condition may be not remediable. The ALJ was required to examine the medical conditions and personal factors that bear on whether Dodrill can reason-

ably remedy her obesity. *See Hammock v. Bowen*, 879 F.2d 498, 504 (9th Cir.1989) (adopting this rule from Fifth and Sixth Circuits).

The ALJ's focus on Dodrill's failure to lose weight suggests he did not include her obesity in determining the degree of her impairment or give proper weight to its accompanying symptoms in making his disability evaluation. He could not do so without a preliminary finding that the obesity was in fact remediable. On remand, the ALJ should evaluate whether Dodrill's obesity was reasonably remediable; if it was not, he "must consider [her] obesity as a factor contributing to her disability," *id.* at 504, and weigh the combination of her impairments accordingly.

### Conclusion

The Secretary's determination that Dodrill retains residual capacity to perform her past work is not supported by substantial evidence in the record. A remand is necessary for the ALJ to repeat the step four analysis, articulating specific findings for rejecting her pain testimony and the testimony of the lay witnesses, and evaluating whether Dodrill's obesity is a remediable condition.

### REVERSED and REMANDED.