70 F.3d 1279
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Martiros NSHANYAN, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 94-55486.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 14, 1995.*
Decided Nov. 20, 1995.
 
 1
 Before: BROWNING and PREGERSON, Circuit Judges, and TANNER,** District Judge.
 
 BACKGROUND
 
 2
 Martiros Nshanyan applied for supplemental social security disability insurance benefits under Title XVI of the Social Security Act in 1991, alleging onset of disability from 1989. Nshanyan's treating physician, Dr. Agop Aintablian, initially saw Nshanyan for complaints of shortness of breath, joint pain, low back pain and nervousness. Dr. Aintablian diagnosed Nshanyan with hypertension, low back pain syndrome, dyspnea, probably cardiac and underlying chronic obstructive pulmonary disease.
 
 
 3
 Plaintiff's application for disability benefits was denied. At a hearing before an Administrative Law Judge (ALJ) which included the testimony of a medical advisor and vocational expert, Nshanyan testified that he could not work because he has difficulty breathing, suffers right side weakness, pain in his knees, legs, left thumb, and back, chest pains, spasms and shaking. The ALJ determined that Nshanyan was not disabled, and that he was capable of performing both medium work and his past work as a molding machine operator. The district court affirmed the Secretary's decision, and Nshanyan timely appealed. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291 and 42 U.S.C. Sec. 405(g). We REVERSE the Secretary's decision and REMAND for further findings.
 
 STANDARD OF REVIEW
 
 4
 A district court's grant of summary judgment is reviewed de novo. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992). We must affirm the Secretary's findings if they are supported by substantial evidence, and the Secretary applied the correct legal standards. Salvador v. Sullivan, 917 F.2d 13, 14 (9th Cir.1990). Substantial evidence means " 'more than a mere scintila', but 'less than a preponderance.' " Magallanes v. Bowen, 981 F.2d 747, 750 (9th Cir.1989). We must consider the record as a whole, weighing both the evidence that supports and detracts from the Secretary's conclusion. Id.
 
 DISCUSSION
 
 5
 To qualify for social security disability benefits, Nshanyan must show that a medically determinable physical impairment prevents him from engaging in any substantial gainful activity and that the impairment is expected to last for a continuous 12-month period. 42 U.S.C. Sec. 423(d)(1)(A); Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1278 (9th Cir.1987). The impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Sec. 423(d)(3).
 
 
 6
 The claimant bears the burden of proving disability. Gamer, 815 F.2d at 1278. A claimant makes a prima facie case of disability if he can prove his impairments render him incapable of performing his previous occupation. Id. The burden then shifts to the Secretary to show that the claimant can perform other substantial gainful activity given his age, education and work experience. Id.
 
 
 7
 The relevant inquiry is whether substantial evidence is lacking to support the ALJ's conclusion that Plaintiff's impairments do not significantly limit his ability to perform his past relevant work as well as medium work.
 
 
 8
 The medical evidence indicates that Nshanyan suffers from hypertension, osteoarthritis, moderate obstructive pulmonary disease, and elevated cholesterol. The Secretary does not dispute that Nshanyan suffers from these impairments. Rather, it is the severity of those impairments and the extent to which they limit his ability to work that are in question.
 
 Treating Physician's Opinion
 
 9
 Nshanyan argues that the Secretary improperly rejected the testimony of his treating physician, Dr. Aintablian.
 
 
 10
 A treating physician's opinion is normally accorded great weight. Magallanes, 881 F.2d at 751. However, that opinion is not necessarily conclusive on the issue of a physical condition or the ultimate issue of disability. Id. To reject the opinion of a treating physician which conflicts with that of an examining physician, the ALJ must make findings setting forth specific, legitimate reasons based on substantial evidence in the record. Id.[1] Relying on the testimony of medical advisor Dr. Maxwell, the ALJ determined that no objective findings supported Dr. Aintablian's conclusion of disability, or most of his diagnoses except for hypertension, because they were based mostly on Nshanyan's subjective complaints. While Dr. Maxwell concedes that Nshanyan suffers from hypertension, chronic obstructive pulmonary disorder and osteoarthritis of the low back, he disputes Dr. Aintablian's diagnosis of seizure disorder, and osteoarthritis of the shoulder and knees.
 
 Encephalopathy
 
 11
 Plaintiff argues that the ALJ's decision that Nshanyan did not suffer from seizures is not supported by substantial evidence.
 
 
 12
 While acknowledging that Nshanyan suffers from hypertension, the Secretary contends that Nshanyan's hypertension was not severe enough to result in encephalopathy and underlying seizure disorder.[2] Nshanyan complained of spasms, shakiness, and near loss of consciousness, which was witnessed by family members and related to Dr. Aintablian. Electroencephalograms (EEGs) were normal, however, Dr. Aintablian's report indicated that EEGs may be normal in people with seizure disorder. A subsequent cat scan revealed some lacunar infarcts, which Aintablian interpreted as evidence of hypertensive encephalopathy.[3] Dr. Maxwell testified that the only neurological symptoms exhibited by Nshanyan that one would expect with hypertensive encephalopathy were Nshanyan's allegations of hand weakness, and he dismissed the evidence of lunar infarcts as a "nonspecific finding" which did not indicate seizure disorder. Nonetheless, Dr. Maxwell conceded the possibility of encephalopathy.[4] Considering the record as a whole, the ALJ's finding that there is no objective evidence to support Dr. Aintablian's diagnosis of seizure disorder is not supported by substantial evidence.
 
 Osteoarthritis
 
 13
 The ALJ determined that there were no objective findings to support Nshanyan's claim of arthritic pain in his shoulder and knees. The medical record consists of X-rays of the lumbosacral spine, revealing mild degenerative changes and minimal anterior wedging of the L1 vertebra, as well as osteophytes between C4-C7 and slight narrowing of C5-C6 joint space. Thus, there is substantial evidence to support Dr. Aintablian's diagnosis of osteoarthritis.
 
 Plaintiff's Subjective Complaints
 
 14
 Nshanyan argues that the Secretary erred in failing to give specific reasons for finding Nshanyan's pain testimony "not credible and not substantially supported by the documentary record or the medical testimony."
 
 
 15
 This court has acknowledged that "pain is a highly idiosyncratic phenomenon, varying according to the pain threshold and stamina of the individual victim." Varney v. Secretary of Health and Human Services, 846 F.2d 581, 584 (9th Cir.1988). For this reason, pain testimony should be considered in determining disability so long as the pain is associated with medical impairments that could reasonably be expected to produce the pain or symptoms alleged. Id. at 583. The claimant bears the burden of producing medical evidence of an underlying impairment that is reasonably likely to be the cause of the alleged pain. Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir.1991). Thus, it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings. Gamer, 815 F.2d at 1279.
 
 
 16
 Nshanyan complains of pain in his joints, low back and knees radiating down his legs, spasms and shakiness, pain traveling to his heart, and right-side weakness in the shoulder and arm. Although Nshanyan's complaints of knee and shoulder pain may not be fully corroborated by objective medical findings, Nshanyan has produced evidence of osteoarthritis. Nshanyan's complaints of chest pain and breathing difficulties are reasonably attributable to his chronic obstructive heart disorder, and his spasms to encephalopathy and possible seizure disorder. Clearly, Nshanyan suffers from physical conditions that could reasonably be expected to produce some degree of pain and limitation.
 
 
 17
 While an ALJ may reject a plaintiff's subjective complaints of pain, failure to make specific findings justifying that decision is improper as a matter of law and requires reversal and remand for further proceedings. Varney, 846 F.2d at 584.
 
 
 18
 The ALJ made insufficient findings regarding Nshanyan's complaints of pain. First, the ALJ notes:
 
 
 19
 [Dr. Maxwell] indicated that claimant's complaint of knee pain was probably due to mild osteoarthritis, although there were no objective findings in the record, only the claimant's subjective complaints concerning this symptom.
 
 
 20
 E.R. at 8. In this first finding, the ALJ identified the source of pain, but gave no indication of what medical evidence suggested Nshanyan's claim of pain was not credible.
 
 Second, the ALJ found:
 
 21
 The claimant's multiple subjective complaints including pain and his alleged functional limitations as described in the documentary record, his testimony, and this decision are not credible and are not substantially supported either by the documentary record or the medical testimony.
 
 
 22
 E.R. at 10. In this finding, the ALJ indicated neither which complaint of pain he was referring to, or what medical evidence suggested Nshanyan's claim of pain was not credible. Thus, these two references do not amount to specific findings. Gamer, 815 F.2d at 1279.
 
 
 23
 Evidence which an ALJ can rely on to discredit pain allegations includes testimony about a claimant's daily activities. If a claimant is able to spend a substantial part of his day engaged in activities that are transferable to a work setting, this may be sufficient to discredit an allegation of disabling pain. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989). The type of activities contemplated in Fair include performing household chores or other functions involving the same physical tasks required in a particular job.
 
 
 24
 In upholding the ALJ's rejection of Nshanyan's credibility, the magistrate judge was persuaded by the ALJ's observations that Nshanyan drives his car locally, climbs stairs to his apartment, and shops with his wife.[5] However, the ALJ failed to make specific findings that any of Nshanyan's daily activities are transferable to the workplace, nor did the ALJ explore whether Nshanyan's routine activities were limited by his pain. For instance, the ALJ considered Nshanyan's driving only to determine the severity and frequency of Nshanyan's spasms, excluding the occurrence of other pain, (e.g., knee, shoulder, hand and chest) during this activity. There was no discussion of how frequently Nshanyan drives, or how far. There was no discussion of how often Nshanyan must climb steps, or how many; nor was there discussion of how often Nshanyan shops with his wife, or what level of exertion that activity requires. Since evidence of Nshanyan's daily activities is limited, the issue arises whether the activities he engages in are transferable to a work setting. Unfortunately, the ALJ has not made specific findings to this effect. Thus, the ALJ's findings that Nshanyan's daily activities indicate he was not in disabling pain are unsupported by the record as a whole. Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir.1993).
 
 Residual Functional Capacity
 
 25
 The Secretary concluded that Nshanyan has the residual functional capacity to perform his past work, as well as medium level work. Under the Secretary's regulations, "medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. Sec. 404.1567(c) (1986). The ALJ's determination that Plaintiff could perform medium work is based on the testimony of Dr. Maxwell and vocational expert Howard Goldfarb.
 
 
 26
 Dr. Maxwell testified that Plaintiff could occasionally and frequently lift up to 50 pounds, and that while he should avoid continuous exposure to toxic and irritating fumes, the results of pulmonary function testing would allow Plaintiff to function normally.
 
 
 27
 The vocational expert described Nshanyan's previous work as a molding machine operator as being light and semi-skilled which usually required occasional sitting and standing, and stated that this occupation would not expose Nshanyan to any noxious fumes.
 
 
 28
 A hypothetical posed by the ALJ must set forth all of the claimant's limitations and restrictions. DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir.1991).
 
 
 29
 The hypothetical posed to the vocational expert assumed that a person who would occasionally have a mild spasm or jerking, and remain conscious, could perform the Plaintiff's previous job.
 
 
 30
 However, the hypothetical did not consider the effect that Nshanyan's uncontrolled hypertension and pain traveling to his heart would have on his ability to perform his previous work or the lifting requirements for medium work.
 
 
 31
 Because the hypothetical did not account for all of Plaintiff's alleged conditions, the opinion of the vocational expert has no evidentiary value. Varney, 846 F.2d at 585.
 
 Competency of Dr. Maxwell's Testimony
 
 32
 Appellant argues that Dr. Maxwell's testimony that Nshanyan's hypertension is reasonably controlled, and that Plaintiff's pulmonary condition would not result in fatigue from lifting 50 pounds frequently because the pulmonary function tests "don't meet the listings" is incompetent and justifies reversal. While Plaintiff is correct that the listings have nothing to do with what limitations might be caused by his impairments, the gist of Maxwell's testimony was that Nshanyan's limitations are within a degree that would allow him to function normally.[6]
 
 
 33
 Next, Dr. Maxwell testified that Plaintiff could lift 50 pounds frequently. Dr. Maxwell's testimony in this regard is ambiguous, as shown from Dr. Maxwell's responses to questions propounded to him at the Oral Hearing before the ALJ.[7]
 
 
 34
 Plaintiff argues that the inferences drawn from Maxwell's testimony are not reasonable, since it does not logically flow from the evidence that a person who can lift 50 pounds frequently can also lift 50 pounds occasionally. Taken as a whole, however, Dr. Maxwell's testimony is not so flawed as to constitute legal error.
 
 Representation of Nshanyan at Hearing
 
 35
 The Supreme Court has held that an ALJ has the duty to fully and fairly develop the record for a claimant in social security proceedings. Richardson v. Perales, 402 U.S. 389 (1971). Where, as here, a claimant is not represented by counsel, "it is incumbent upon the ALJ 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.' " Cox v. Califano, 587 F.2d 988, 991 (9th Cir.1978).
 
 
 36
 At the administrative hearing, Nshanyan was represented by non-attorney Iznif Issain. The ALJ elicited testimony from Nshanyan regarding the location of his right-side weakness, and the location and frequency of his pain and "body shaking" symptoms. Plaintiff also testified that he walked up the stairs to his apartment, drove locally, shopped with his wife, and did no cooking. The record indicates that Nshanyan's past work required constant bending and standing, and frequent lifting up to 25 pounds. However, no testimony was elicited at the hearing about Nshanyan's ability to perform bending and prolonged standing, considering his allegations of pain and difficulty breathing. Because the ALJ failed to fully develop the record and summarily rejected Nshanyan's allegations of pain, remand is necessary.
 
 Remand for New Evidence
 
 37
 Plaintiff also argues that there is good cause for remand of this case under 42 U.S.C. Sec. 405(g) for consideration of new evidence. The new evidence consists of a psychological report prepared by Doctor Yetenekian in July of 1993, alleging that Nshanyan suffers from a significant mental impairment, and a Disability follow-up by Dr. Aintablian dated November 20, 1993. Both were prepared after the ALJ's March 10, 1993 decision.
 
 
 38
 To be entitled to a remand, plaintiff must show "that there is new evidence which is material, and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding ..." 42 U.S.C. Sec. 405(g) (emphasis added).
 
 
 39
 New evidence is material if there is a reasonable possibility that it would have changed the outcome of the Secretary's decision, had it been before him. Booz v. Secretary of Health & Human Servs., 734 F.2d 1378, 1380 (9th Cir.1984).
 
 
 40
 Good cause is lacking if the evidence could have been solicited at the administrative level. Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir.1985). Nshanyan sought remand before the Magistrate, and was denied. The district court correctly found that Nshanyan failed to show why the evidence could not have been developed and submitted earlier, and that Dr. Aintablian's report basically summarizes his previous reports. We agree, and decline to remand on this ground.
 
 CONCLUSION
 
 41
 The hypothetical posed to the vocational expert failed to set forth all of Nshanyan's limitations. Furthermore, the ALJ did not fully and fairly develop the record for Nshanyan regarding his pain and functional limitations. We therefore REVERSE the Secretary's determination that Nshanyan has the ability to perform his previous work and medium work and REMAND for further findings.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 The Honorable Jack E. Tanner, Senior District Court Judge for the Western District of Washington, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The ALJ can meet this burden "by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir.1986)
 
 
 [2]
 First, Dr. Maxwell testified that Nshanyan's blood pressure was usually recorded in the 160/90 range, which he thought was acceptable and not uncontrolled. A review of the record, however, shows that the majority of Nshanyan's blood pressure readings greatly exceeded 160/90. Thus, there is not substantial evidence to support the ALJ's finding that Dr. Aintablian's treatment had significantly lowered Nshanyan's blood pressure
 
 
 [3]
 Encephalopathy is a degenerative disease of the brain which can result in headaches, convulsions, coma, etc. occurring in the course of malignant hypertension. See Dorland's Medical Dictionary, 27th Ed., pp. 550-51 (Appendix to Appellee's Brief, Ex. B)
 
 
 [4]
 Dr. Maxwell did not examine Nshanyan, and his opinion is not based on objective clinical tests
 
 
 [5]
 Nshanyan's Disability Report states that he does no household chores
 
 
 [6]
 The discourse between the ALJ and Dr. Maxwell proceeded as follows:
 Q Okay. Would this pulmonary problem result in any, in any fatigue throughout a work day if, if he were required to lift 50 pounds frequently? Would that limit him--I mean those in combination with the osteoarthritis, would be some kind of limitation there?
 A Still not based on the record. No.
 Q Okay. That's because the, the pulmonary function tests were--
 A Don't meet the listings. Right.
 Q Well, even,--
 A And--
 Q Even though they don't meet the listings--
 A I'm sorry.
 Q --is there, is there some limitation, or, or are they of a degree that would permit generally a person to, to function normally?
 A Correct.
 Court Record at 44.
 
 
 [7]
 
 Q What kind of--given his condition, what kind of functional limitations would there be on him?
 A Well, certainly no more than 50 pounds frequent lifting, I think because of his osteoarthritis--
 Q And--
 A and also his high blood pressure.
 Q You say 50 pounds frequently?
 A Frequently, Right.
 Q Frequently. So he, he could lift 50 pounds frequently?
 A Occasionally. I'm sorry, occasionally.
 Q Oh, occasionally. And, and how much frequently?
 A That would also be--I'm sorry--frequently would be 50 pounds.
 Q Okay. So he's in pretty good shape generally?
 A Based on the record.