Kim Van NGUYEN, Plaintiff–Appellant,

v.

Shirley S. CHATER, Commissioner of the
Social Security Administration,*
Defendant–Appellee.

No. 95–55346.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 9, 1996.

Decided Nov. 20, 1996.

* Pursuant to P.L. No. 103–296, the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of the Social Security Administration, effective March 31, 1995. In accordance with section 106(d) of the Act, Shirley S. Chater, the Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant.

Martin Taller, Anaheim, CA, for plaintiff-appellant.

Donna W. Anderson, Assistant Regional Counsel, United States Social Security Administration, San Francisco, CA, for defendant-appellee.

Before: REINHARDT and LEAVY, Circuit Judges and COYLE,** District Judge.

REINHARDT, Circuit Judge:

Claimant, Kim Van Nguyen, appeals from a denial of Social Security Disability benefits and Social Security Income benefits. While he has a history of numerous medical problems, including the effects of having been shot in both legs by the Communists in 1970 when he was a soldier in the South Vietnamese army,[1] the two principal issues in this case concern the ALJ's consideration of claimant's affective disorder and the effects of his chronic bronchial asthma. Specifically, claimant contends that the ALJ improperly credited a non-treating medical advisor over

---

** Honorable Robert E. Coyle, United States District Judge for the Eastern District of California, sitting by designation.

1. He also suffers from hypertension, hypercholesterolemia, gastritis, headaches, borderline diabetes and bronchial asthma. The parties do not disagree that claimant's leg problems restrict him to sedentary work. Nor do they dispute that his hypertension and hypercholesterolemia are controlled with medication or that these problems and his diabetes and gastritis do not materially affect his ability to work.

an examining psychologist because the ALJ failed to set forth specific legitimate reasons for doing so and the ALJ erred by not considering the lay testimony of claimant and his wife in evaluating claimant's residual functional capacity (RFC) or giving specific reasons for rejecting that lay testimony. We agree with claimant and therefore vacate and remand.

**I.**

■ Claimant contends that the ALJ erred by not crediting the conclusion of the examining psychologist, Dr. Brown, who determined that claimant met listing 12.04 for affective disorders. 20 CFR Pt. 404, Subpt. P., App 1, 12.04. The ALJ did not explicitly reject the opinion of Dr. Brown; he did, however, rely on the opinion of Dr. Walter, the non-examining psychologist called by the Commissioner. In Dr. Walter's opinion, claimant did not meet the listing 12.04. We hold that the ALJ erred because he neither explicitly rejected the opinion of Dr. Brown, nor set forth specific, legitimate reasons for crediting Dr. Walter over Dr. Brown. *E.g., Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir.1995); *see also Lester v. Chater,* 81 F.3d 821, 831 (9th Cir.1995) (as amended) ("The opinion of an examining doctor, even if contradicted by the opinion of another [nonexaming] doctor, can only be rejected for specific and legitimate reasons that are supported by the record.").

While the ALJ made a number of comments in his report that might appear to be a basis for questioning Dr. Brown's conclusions, even if we were to read these observations in that manner, they would not constitute "specific, legitimate reasons" for rejecting Dr. Brown's opinion or crediting Dr. Walter's opinion over that of Dr. Brown. For example, the ALJ noted that the opinions in Dr. Brown's supplemental report "were not derived from a test or examination environment, or from the previous findings of various medical reports of record." Contrary to the ALJ's statement, Dr. Brown stated that his supplemental report was based, in part, on a review of his

1991 assessment of claimant, which was based on an *examination* of claimant and the administration of a battery of tests. In addition, since the only other medical opinion available on mental impairment, that of Dr. Walter, is based solely on a review of medical records, primarily those of Dr. Brown, and very cursory questioning of claimant at the hearing, the ALJ's stated reason would not constitute a legitimate basis for favoring Dr. Walter's opinion over Dr. Brown's.

■ The ALJ also stated that Dr. Walter had pointed out that "the evidence was devoid of any findings or complaints relative to a mental disorder of the claimant during the period of May 1988 until November 18, 1991, when the claimant was examined by a psychologist, R. Wayne Brown, Ph.D.,[2] at the request of the claimant's attorney." This is not a legitimate basis on which to discount Dr. Brown's opinion that claimant has a severe depressive disorder. First, the fact that the examination was conducted at the request of an attorney is relevant where the opinion itself provides grounds for suspicion as to its legitimacy. We have held the source of a referral to be relevant where there is no objective medical basis for the opinion, *Burkhart v. Bowen,* 856 F.2d 1335, 1339 (9th Cir.1988), and where there is evidence of "actual improprieties" on the part of the doctor whose report the ALJ chooses to reject. *Saelee v. Chater,* 94 F.3d 520, 523 (9th Cir.1996) (per curiam). In *Saelee,* the ALJ noted among other things that there was no objective medical basis for the doctor's opinion and that the report was inconsistent with the doctor's own treatment notes. *Id. Saelee* relied on *Burkhart* for the proposition that under certain circumstances the ALJ may consider the purpose for which a doctor's report was obtained. In *Burkhart,* we held that consideration of the fact that a doctor's report was solicited by claimant's counsel was "a permissible credibility determination *given the evidence before the ALJ.*" *Burkhart,* 856 F.2d at 1339 (emphasis added). In that case, the evidence before the

---

**2.** For some unexplained reason the ALJ referred to Dr. Brown on a number of occasions as R. Wayne Brown, Ph.D., and Dr. Walter as Dr. Walter, even though both are clinical psychologists with similar credentials.

ALJ was that the report of the doctor that the ALJ rejected consisted of no more than a wholly conclusory opinion unsupported by *any* objective medical findings, personal observations or test reports, and was directly contradicted by the conclusions of a number of other treating physicians whose opinions were based on objective medical findings. *Id.*

■ In this case, none of the factors are present that would allow the ALJ to consider the source of the referral of Dr. Brown's patient in assessing the doctor's credibility. Dr. Brown's thorough report is based on an examination, a battery of tests, and review of the claimant's hearing testimony. His is not a mere "unsupported opinion." *Id.* Nor is there any evidence of any "actual improprieties," *Lester,* 81 F.3d at 832, on Dr. Brown's part, such as an inconsistency between his treating notes and the report he submitted to the ALJ or evidence that he was deliberately attempting to mislead the ALJ for the purpose of helping claimant obtain benefits. *See Saelee,* 94 F.3d at 523. To the contrary, Dr. Brown repeatedly set forth both the evidence that supported his conclusions and that which undermined them. That does not mean that Dr. Brown was correct or that his report must prevail, but it does mean that Dr. Brown's credibility is not subject to attack on the basis of the source of his patient's referral.

Second, it is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness. *See, e.g.,* Warren E. Leavy, *Hidden Depression,* Chi. Trib., Feb. 1, 1996 at 7 (noting that nearly 17 million adult Americans suffer from depression in a given year and that two-thirds of them do not get treatment). Thus, the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that Dr. Brown's assessment of claimant's condition is inaccurate. As the Sixth Circuit has noted in finding invalid an ALJ's reasons for rejecting claimant's assertions about his depression, '[a]ppellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.' *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir.1989).

■ The government contends that the ALJ legitimately discounted Dr. Brown's report because it is inconsistent with claimant's own testimony. We disagree. Where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as the basis for the rejection of an examining physician's conclusions. The ALJ stated that Dr. Brown

> indicated that claimant had testified that he never travelled outside or played with his children and that he sits in a chair most of the day. However, the record contains facts to the contrary to the claimant's testimony as he has indicated during the previous examinations that he was able to watch television for several hours a day, play with his children, and attend church on a weekly basis. He drove an automobile.

An examination of Dr. Brown's reports demonstrates that only by quoting an isolated sentence and mischaracterizing his statements can one create any apparent inconsistency between the report and claimant's testimony. However, even that appearance is dissipated by a plain reading of the record. Dr. Brown stated:

> Testimony that argues for his having a loss of interest in his life is that he sits in a chair most of the day and does not go outside, *or go outdoors and play with his children....* Mr. Nguyen related that he had no interest or hobbies or other activities outside of his home, and that his free time is spent caring for his children, watching T.V. and attending church on a regular basis. These activities that show some degree of interest as related by his wife's testimony are that they go to church once a week by means of Mr. Nguyen driving; he sometimes drives her to a shopping destination while he remains in the automobile, and by his testimony he sits around the house and *plays with his children.*

In this examiner's opinion, this represents a marked loss of interest for a male his age.

It is clear that Dr. Brown did not misstate claimant's testimony or rely on testimony by claimant that contradicted his other testimony. Contrary to the ALJ's statement, Dr. Brown acknowledged that claimant played with his children; he stated only that he did not play with them outside. This statement is consistent with the testimony of both claimant and his wife. Also, the only reasonable reading of Dr. Brown's report is not that claimant *never* physically sets foot outside the house. He clearly acknowledges that claimant does go to church once a week, and occasionally drives his wife to the store, although he does not get out of the car to accompany her. The only logical and reasonable reading of the report is that Dr. Brown notes that claimant rarely leaves his house except in the instances noted. In addition, the "inconsistency" that the ALJ creates between Dr. Brown's statement that claimant sits in his chair most of the day, and the fact that claimant stated that he watches television several hours a day is also wholly illusory. One sentence after Dr. Brown stated that claimant sits in a chair most of the day, he reported that claimant watches a lot of television. Most people who watch television do so sitting in a chair. There is simply no basis in fact for the ALJ's conclusion that Dr. Brown's report was inconsistent with the record.

 In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record. The ALJ failed to do so here. *E.g., Lester*, 81 F.3d at 831.[3]

## II.

 The ALJ determined that claimant's asthma in combination with his leg injuries did not preclude him from doing sedentary work in a clean room as a packager/assembler. He did so apparently on the basis of the medical examiner's report that claimant's asthma is mild. He also determined, apparently based on evidence from Dr. De Los Santos, the medical examiner and Dr. Dickstein, that although the claimant experiences occasional discomfort and shortness of breath, his "symptoms are managed on a daily basis with medications including inhalant and that by avoidance of working in areas in which he would be exposed to noxious or irritating fumes, the claimant could avoid exacerbation of his mild pulmonary condition." The ALJ also relied on the testimony of the vocational expert that claimant could work as a packager or assembler in a clean room environment.[4]

3. Even if the ALJ had properly credited Dr. Walter's testimony regarding the extent of claimant's mental impairment, the ALJ erred by simply concluding that "the claimant's mental symptomology does not significantly impact his ability to perform at least entry level sedentary work including as an assembler of food or pharmaceuticals in a clean environment." Restrictions on activities of daily living, social functioning, and completing work in a timely fashion, clearly have the potential to affect a claimant's residual functional capacity (RFC), and therefore his ability to work. *See* 20 CFR § 404, Subpt. P. App. 1, 12.00 (Introduction). According to Dr. Walter, claimant's restrictions do not meet the listing and are not marked; however, they are nonetheless restrictions. These restrictions must be considered, in conjunction with claimant's physical impairments, in determining his residual functional capacity. 20 CFR § 404.1523; *Beecher v. Heckler*, 756 F.2d 693, 694–95 (9th Cir.1985) (where claimant suffers both physical and mental impairments both must be considered together in evaluating their effects). The ALJ failed to in-

clude any of claimant's mental restrictions, as set forth by Dr. Walter, in the hypothetical to the vocational expert—except perhaps the concentration restriction to the extent that the hypothetical called for claimant to do "simple one-two-three jobs". Because the hypothetical was incomplete, it does not constitute competent evidence to support a finding that claimant could do the jobs set forth by the vocational expert. *E.g., Varney v. Secretary*, 846 F.2d 581, 585 (9th Cir.1988) (vocational expert's response to incomplete hypothetical had "no evidentiary value.")

4. The ALJ also appeared to conclude that claimant was not disabled on the basis of the "grids." That finding constitutes error because it is not appropriate to rely on the grids where the claimant suffers, as Van Nguyen does, from both an exertional limitation and an environmental restriction such as intolerance of fumes. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir.1984) (holding it is error to rely on the grids where claimant has both an exertional limitation and an inability to tolerate fumes).

■ Claimant contends that the ALJ erred by failing to take into account his testimony and that of his wife as to the extent and effects of his asthma, primarily his regular wheezing and cough. The ALJ took account of claimant's asthma in his hypothetical to the vocational expert only to the extent he asked whether relevant work was available in clean rooms. Claimant's attorney, however, asked the vocational expert whether claimant could do an assembler/packager's job in a clean room if he had a repeated chronic coughing problem. The vocational expert indicated that employers would not tolerate employees who coughed excessively in a clean room job. But the vocational expert refused to be pinned down as to what constituted "excessive coughing" or whether claimant's condition could be considered excessive coughing. After the attorney reexamined claimant and established that there were some days where he coughed repeatedly throughout the day, the ALJ refused to let counsel's attorney ask more questions of the vocational expert to establish if that amount of coughing would preclude work in a clean room environment. Claimant's wife also testified at one of the hearings. She reported that her husband had trouble sleeping and that he woke up a lot due to coughing. She also stated that he had a hard time breathing and had coughing problems all the time, both day and night.

■ The ALJ included neither claimant nor his wife's descriptions of his serious coughing problems in the hypothetical to the vocational expert, nor did he expressly state that he would discount their testimony or give any reasons therefore. By failing to include in the hypothetical the physical manifestations that were described by the witnesses or expressly rejecting the testimony for legitimate reasons, the ALJ erred. Lay testimony as to a claimant's *symptoms* is competent evidence which the Secretary must take into account, *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993), unless he expressly determines to disregard such testimony, in which case "he must give reasons that are germane to each witness." *Id.* The government contends, relying on *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir.1984), that it was not error for the ALJ to disregard the lay testimony *without* giving specific reasons for doing so. It asserts that the ALJ need not discuss "lay witness testimony that conflict[s] with the available medical evidence." The reliance on *Vincent* is misplaced. In that case, lay witnesses were making medical *diagnoses*, e.g., that the claimant had a serious mental impairment as a result of a stroke. Such medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence. 20 CFR § 404.1513(a). However, lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence, 20 CFR § 404.1513(e), *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987), and therefore *cannot* be disregarded without comment. *Dodrill*, 12 F.3d at 919.

Because the ALJ did not set forth reasons as to why he chose to discount the coughing testimony (which is consistent with the medical reports of Dr. Mutumacara that claimant suffers from chronic asthma and serious coughing and wheezing problems), the ALJ's conclusion that claimant can do his previous work as a packager, in a clean room environment, is not supported by substantial evidence.

**Conclusion**

On remand, the ALJ shall issue a new decision that is consistent with the applicable law as set forth in this disposition. It is not our intent, however, to preclude the ALJ from reopening the hearing to receive additional evidence should such a course of action be deemed appropriate.

REVERSED AND REMANDED for further proceedings in accordance with this opinion.

LEAVY, Circuit Judge, concurring in part and dissenting in part:

I concur in Part II of the majority opinion, but must dissent from the analysis and conclusion of Part I.

Citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995) and *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir.1995) (as amended), the majority concludes that "the ALJ erred

because he neither explicitly rejected the opinion of Dr. Brown, nor set forth specific, legitimate reasons for crediting Dr. Walter over Dr. Brown." Opinion at 1464. *Andrews* does not support the proposition stated, and *Lester* is inapposite.

In *Andrews,* the ALJ credited the testimony of a nontreating, consulting medical advisor over that of a nontreating, examining psychologist. On appeal we stated that, just as the opinion of a treating physician is ordinarily accorded greater weight than that of a nontreating physician, "greater weight is accorded to the opinion of an examining physician than a non-examining physician." 53 F.3d at 1041 (citing a federal regulation and a footnote to a Ninth Circuit case).[1] We did *not* hold, however, that an ALJ must provide specific, legitimate reasons for giving greater weight to the opinion of a consulting physician than to that of an examining physician; in fact, we applied a much lower standard, different from that used in the treating *versus* nontreating physician situation:

> [W]hen it is an *examining* physician's opinion that the ALJ has rejected in reliance on the testimony of a nonexamining advisor, reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.

*Andrews,* 53 F.3d at 1041 (emphasis in original).

In *Lester,* we reversed the ALJ's decision rejecting the medical opinions of *both* a treating physician *and* an examining psychologist in favor of that of a nonexamining medical advisor because there was no "record evidence to support it [i.e., the nonexamining medical advisor's opinion]". 81 F.3d at 832.

Here, substantial record evidence supports the ALJ's finding that the claimant was not mentally disabled. The ALJ explicitly found that there was no evidence of any mental impairment on the part of the claimant prior

to 1991,[2] and that "[t]he claimant has not been under any 'disability' as defined in the Social Security Act, as amended, at any time through the date of this decision." ER vol. II at 180, Finding # 9. In reviewing the ALJ's decision in the light of the administrative record, the district court reached the following conclusion:

> The second critical deficiency in plaintiff's argument is the absence of any evidence showing that he had a listed impairment *prior to the expiration of his insured status.* Even if plaintiff had met the requirements of section 12.04 at the time Dr. Brown examined him in November, 1991, the ALJ's decision would still be upheld, because there is *no* evidence showing that plaintiff met those criteria as of December 31, 1989, when his insured status expired. To the contrary, the record demonstrates that the Listed Impairment was *not* present at that time.

> The record shows, for example, that plaintiff never mentioned any mental impairment in his original applications for benefits filed in 1988. More significantly, when plaintiff asked the Court to remand this case for consideration of additional medical evidence in 1991, no mention was made of any mental impairment. Only after the case was remanded, and nearly two years after the expiration of plaintiff's insured status, did plaintiff first seek an evaluation of his mental condition.

> While Dr. Brown's report indicates that plaintiff's mental health had been deteriorating for two to three years prior to his 1991 examination, he was merely repeating plaintiff's own assessment of his condition. If anything, the reported deterioration in plaintiff's mental health clearly implies that his condition was better in 1989, when his insured status expired. Indeed, Dr. Brown's statement that plaintiff has been "temporarily partially disabled on a psychological basis *since the end of 1989,*" establishes that even he did not consider

---

**1.** 20 C.F.R. § 416.927(d)(1); *Pitzer v. Sullivan,* 908 F.2d 502, 506 n. 4 (9th Cir.1990).

**2.** *See* ER vol. II at 173 ("the evidence was devoid of any findings or complaints relative to a mental disorder of the claimant during the period of

May 1988 until November 18, 1991"); *id.* at 178 ("prior to the examination conducted of the claimant at the request of his attorney in November 1991, the record is devoid of any findings of any mental disorder of the claimant").

the impairment to be serious enough to be termed "disabling" prior to the expiration of plaintiff's insured status. Finally, the absence of a disabling mental condition is supported by the further fact that plaintiff *never* sought or received any treatment for such condition.

ER vol. I, # 29 at 8–9 (internal citations and footnotes omitted; emphasis in original).

There is more than substantial evidence in the administrative record to support the ALJ's finding that the claimant did not suffer from a mental impairment prior to December 31, 1989. Accordingly, I would affirm.