Paul **MATLOCK**, Plaintiff—Appellant,

v.

Jo Anne B. **BARNHART**, Defendant—Appellee.

No. 02–56264.

D.C. No. CV–01–04152–JFW.

United States Court of Appeals, Ninth Circuit.

Submitted June 2, 2003.*

Decided Feb. 2, 2004.

Reed, United States District Judge, sitting by designation, filed dissenting opinion.

Stephanie M. Simpson, Northridge, CA, for Plaintiff–Appellant.

Jon Pearson, Asst. U.S. Atty., Los Angeles, CA, Theophous H. Reagans, San Francisco, CA, for Defendant–Appellee.

Before THOMAS, PAEZ, Circuit Judges, and REED, District Judge.**

## MEMORANDUM***

Paul Matlock ("Matlock") appeals the judgment of the district court affirming the Commissioner of Social Security's ("Commissioner") denial of his application for disability benefits and supplemental security income. At step three of the evaluation process,[1] the Administrative Law Judge ("ALJ") found that Matlock was not credible because of purported inconsistencies in his testimony. As a result, the ALJ discounted not only Matlock's testimony regarding the severity of his symptoms and the restrictions on his daily activities, but also the testimony of Matlock's wife and the opinion of his treating physician. In light of this determination, the ALJ concluded that Matlock did not have an impairment or combination of impairments that met or equaled a listed impairment, and further found, at step four, that Mat-

---

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

** The Honorable Edward C. Reed, Jr., Senior District Judge for the District of Nevada, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. At step one, the ALJ found that Matlock had not engaged in substantial gainful work since December 1994. At step two, he found that Matlock suffered from severe schizophrenia.

lock was able to perform his past relevant work.

On appeal, Matlock contends that the ALJ's credibility determination was not supported by substantial evidence and therefore the ALJ erred in disregarding his testimony, his wife's testimony, and the opinion of his treating physician. We agree. Accordingly, we reverse and remand for further proceedings.

We review *de novo* the decision of the district court affirming the decision of the ALJ. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir.2001). "The Commissioner's decision to deny benefits will be overturned only if it is not supported by substantial evidence or is based on legal error." *Morgan v. Commissioner of the Social Security Administration*, 169 F.3d 595, 599 (9th Cir.1999) (citations and internal quotation marks omitted).

In finding that a claimant is not credible, an ALJ must provide "specific, cogent reasons for the disbelief," and the reasons given "must be clear and convincing." *Id.* (internal quotation marks omitted). Here, the ALJ determined that the Los Angeles County Department of Mental Health treatment records showed that Matlock was considerably more functional than he reported, listing the following specific reasons: 1) he was stable and compliant in taking his medication; 2) he cared for himself while his wife was out of the state for several months in the fall of 1996; 3) he was able to successfully obtain various services; and 4) he wanted and obtained custody of his son. However, there is no substantial evidence in the record supporting the ALJ's determination that Matlock was not credible.

First, although the treatment records indicate that Matlock was generally willing to take his medication while under his wife's supervision, these records do not indicate that he was asymptomatic with medication. Rather, the records reflect that Matlock's auditory and visual hallucinations diminished, but still persisted, when he took his medication. Moreover, the ALJ also concluded that the treatment records showed that "the claimant functions well on his medications," apparently based upon intermittent notes that at certain times Matlock was "doing well" and "doing better." However, when assessed in context, these notes indicate only that the medication helped Matlock, not that it enabled him to function well. For example, one fairly representative note stated, "Client reports feeling better today—no voices. However, he doesn't sleep well and hearing voices. States the voices have been crying and sometimes he hears it all day long."

Second, the ALJ heavily emphasized the fact, drawn from the treatment records, that Matlock took care of himself for two to four months in the fall of 1996. However, although the treatment records do show that Matlock's wife did not care for him during this time, they also reflect that during his wife's absence Matlock went for three months without attending counseling or obtaining his medications, and only returned to the mental health clinic because he had no food, no jacket, and had been cut off from food stamps and General Relief. Rather than undermining Matlock's claim that he was unable to care for himself, the events that transpired during his wife's absence support such a claim.

Third, the ALJ noted that Matlock's treatment records showed that he was able to visit the Los Angeles County Department of Social Services ("DPSS"), get his General Relief and food stamp benefits reinstated, attend parenting classes, and obtain a turkey. However, rather than demonstrating Matlock's competence, these medical records demonstrate Matlock's inability to function successfully on

his own. As noted above, when Matlock's wife was out of town, his food stamps and General Relief benefits were cut off. When Matlock informed the clinic that his benefits had been terminated, a clinic staff member contacted Matlock's DPSS caseworker on his behalf and relayed to Matlock what she learned about the termination of his benefits. She also obtained a medical evaluation of Matlock by one the clinic's doctors and hand delivered it to the DPSS caseworker. As for the turkey, the records reflect only that Matlock "will get a turkey from Grace Resource." The records, however, do not explain who contacted Grace Resource or whether Matlock ever received the turkey. When viewed in context, the treatment notes do not undermine Matlock's credibility, rather, the records show that, during his wife's absence, Matlock persistently turned to the clinic staff to help him with his personal problems.

The ALJ also noted that Matlock had completed parenting classes and a CPR class during the period in which he stated he was nonfunctional. The mental health records' sole reference to these classes is a notation that Matlock had called and "said that he passed the Parenting Class and takes CPR tomorrow." There is no evidence regarding the nature of these classes, how long they lasted or where they were located. The ALJ did not develop the record regarding these classes, despite questioning Matlock during the hearing. This single reference does not constitute substantial or convincing evidence that Matlock was not credible in

testifying that he was unable to function effectively.

Fourth, the ALJ found that "[i]t is inconceivable that the claimant would have been granted custody if he were as mentally disabled as he claimed." Although there are a number of references to Matlock's desire to obtain custody of his son dispersed throughout his treatment records, the administrative record does not indicate whether Matlock was ever granted custody. The basis for the ALJ's contrary belief was a notation discussing a telephone call "from client's wife who is feeling stressed while working 2 jobs, trying to help her husband's son move out here from Kansas, she's writing to attorney to get him out here." The fact that Matlock wanted to care for his son, who had been removed from his mother because of her drug use, simply does not undermine his claim to be nonfunctional.[2]

As the above discussion demonstrates, the ALJ's conclusion that Matlock was not credible is not supported by substantial or convincing evidence. As a result, the ALJ erred by failing to consider Matlock's testimony, the testimony of his wife or the opinion of his treating physician in assessing whether his mental condition met or equaled Listing 12.03. *See* 20 C.F.R. Pt. 404, Subpt P, App. 1, § 12.03. Accordingly, we reverse and remand so that the ALJ can reevaluate whether Matlock's severe schizophrenia met the requirements for Listing 12.03, and if not, whether he otherwise was disabled. In making these determinations, the ALJ shall consider Matlock's credible testimony, his wife's

---

**2.** The dissent points out that the ALJ found Matlock's credibility undermined because "[n]othing in his medical records indicated ... [Matlock] required a wheelchair." However, Matlock never asserted he had a physical need for the wheelchair. Rather, in response to the ALJ's question, Matlock indi-

cated that his use of the wheelchair was tied to his mental condition because he was "too scared to walk." As such, there is no contradiction between the medical records and Matlock's testimony that would warrant undermining Matlock's credibility.

testimony, and the opinion of his treating physician, Dr. Caraway.

We remand to the district court with directions to remand to the Commissioner for further proceedings consistent with this disposition.

REVERSED AND REMANDED

REED, District Judge, dissenting.

I respectfully dissent from the decision to reverse the district court's judgment and remand the case for further proceedings.

Where there is no evidence of malingering, the ALJ can reject the claimant's testimony regarding the severity of his symptoms only for "specific, clear and convincing reasons." *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir.1996). In this regard, general findings by the ALJ are insufficient. *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.1995). "[R]ather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* "Questions of credibility and resolutions of conflicts in the testimony are functions solely of the [Commissioner]." *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir.1999). In weighing a claimant's credibility, the ALJ can consider ordinary techniques for credibility evaluation, including "inconsistencies either in his testimony or between his testimony and his conduct." *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir.1997).

At his second administrative hearing, Matlock presented that he suffered from schizophrenia so severe that he was completely nonfunctional and homebound since 1994. He attended the hearing in a wheelchair, explaining that when he is scared he is unable to walk. Matlock testified that he uses the wheelchair every day and is completely unable to walk approximately two days each week. On the days that he is capable of walking, Matlock stated that he only walks to the bathroom or the mailbox, which is located on the door to his apartment. He further testified that he only leaves his apartment to go to the doctor's office or the store, and is completely dependent on his wife to attend to his basic physical needs. While the record certainly reflects that Matlock suffers from schizophrenia, the ALJ pointed to substantial evidence which undercuts Matlock's contention that he is completely homebound and nonfunctional.

The ALJ noted that during November of 1994 Matlock looked for work outside of his home and sought information about pre-vocational training. The record also indicates that Matlock was able to care for himself in late 1996 while his wife traveled to the east coast for several months. During his hearing, Matlock claimed that his roommate took care of him during that time period, however, the record indicates that, while "helpful," his roommate was "never home." Although Matlock may have had difficulties during his wife's absence, he was nonetheless able to attend to his basic needs, including working with the clinic to get his food stamp and General Relief benefits restored.

Matlock also passed a parenting class in 1997 and was scheduled to attend a CPR class as part of an effort to obtain custody of his thirteen-year-old son. Although the record does not reveal what these classes entailed, the ability to leave his home and attend even a simple class would demonstrate a level of functioning beyond that claimed by Matlock at his second hearing.

Additionally, the ALJ took note of medical records indicating that when Matlock took his medication he was not depressed, slept well and did not exhibit suicidal or homicidal ideation. Conversely, when he stopped taking his medication, his symp-

toms increased. Nothing in his medical records indicated that Matlock was essentially homebound or required a wheelchair because of his mental illness. In light of this evidence, the ALJ concluded that Matlock "function[ed] well on his medications." Although the record does not indicate that Matlock was asymptomatic when taking his medication, it does reflect a level of management inconsistent with his asserted level of disability.

At his second hearing, Matlock essentially presented that he was an individual utterly crippled by his mental illness, rendering him incapable of taking care of himself or even leaving his home. It is undisputed that Matlock suffers from severe schizophrenia. The issue is whether his mental illness is as debilitating as he claimed during his second hearing. On this issue, the ALJ pointed to specific evidence in the record that conflicted with Matlock's testimony that he was homebound and completely nonfunctional. Presented with this conflicting evidence, the ALJ concluded that Matlock was not a credible witness. In doing so, she discussed in detail the testimony she found not to be credible and the above-cited substantial evidence undermining that testimony. *See Lester,* 81 F.3d at 834. The question of Matlock's credibility regarding the severity of his illness was squarely within the province of the ALJ's judgment, *Morgan,* 169 F.3d at 599, and I believe the ALJ acted properly in this regard.

In light of this conclusion, as well as the medical evidence discussed above indicating that Matlock was fairly stable when on his medication, I would also uphold the ALJ's decision to discredit the opinions of Matlock's wife and physician. *See Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996) (explaining that an ALJ is permitted to reject lay testimony if she gives legitimate reasons for doing so); *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir.2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."); *Morgan* 169 F.3d at 602 (quoting *Fair v. Bowen,* 885 F.2d 597, 605 (9th Cir.1989)) ("A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.' ").

I therefore respectfully dissent.