**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 13 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JOHN S. HUDNALL,<br><br>    Plaintiff - Appellant,<br><br> v.<br><br>LELAND DUDEK, Acting Commissioner of Social Security,<br><br>    Defendant - Appellee. | No. 23-3727<br><br>D.C. No.<br>4:22-cv-02864-DMR<br><br><br>ORDER |

Before: GRABER, FRIEDLAND, and BUMATAY, Circuit Judges.

The Memorandum Disposition filed on March 7, 2025, is withdrawn and replaced with a new Memorandum Disposition filed concurrently with this order. With this replacement, the petition for panel rehearing and the petition for rehearing en banc are **DENIED** as moot. Further petitions may be filed.

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JOHN S. HUDNALL,

        Plaintiff - Appellant,

  v.

LELAND DUDEK, Acting Commissioner
of Social Security,

        Defendant - Appellee.

No. 23-3727

D.C. No.
4:22-cv-02864-DMR

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Donna M. Ryu, Chief Magistrate Judge, Presiding

Argued and Submitted November 19, 2024
San Jose, California

Before: GRABER, FRIEDLAND, and BUMATAY, Circuit Judges.
Concurrence by Judge GRABER.
Concurrence by Judge BUMATAY.

    John Hudnall appeals the district court's decision to grant summary judgment

in favor of the Commissioner of Social Security on his claim for disability benefits.

We have jurisdiction under 28 U.S.C. § 1291 and affirm.

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

We review "the district court's order affirming the [administrative law judge's ("ALJs")] denial of social security benefits de novo, and we will not overturn the Commissioner's decision 'unless it is either not supported by substantial evidence or is based upon legal error.'" *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (citation omitted). In examining medical evidence, the most important factors for an ALJ to consider are "supportability" and "consistency." 20 C.F.R. § 404.1520c(a); *see also Woods*, 32 F.4th at 791–92.

1. Hudnall challenges the ALJ's analysis of the medical evidence. First, he claims that the ALJ erroneously discounted the opinion prepared by his marriage and family therapist, Jana Klass, and signed by one of his physicians, Dr. Dana Rosca. The opinion described Hudnall's symptoms, including "difficulty staying on task" and his self-description "as despondent." The opinion concluded that Hudnall was "unable to maintain work/career due to severe mood [symptoms] that impair overall functionality." The ALJ concluded that this opinion was unpersuasive, both because it suggested that Hudnall's condition showed "no improvement in five years" even though he had not sought treatment during that time and because Klass described Hudnall as a pathological liar in another record. The ALJ also faulted the opinion for relying on Hudnall's subjective reports.

Substantial evidence supports the ALJ's conclusion. Although Hudnall claimed that his disability began on March 1, 2015, the record shows that he sought

little treatment between the initial treatment he received after his mental health episode, ending in 2016, and when he applied for Social Security benefits in March 2020. The record further shows that Klass stated that Hudnall's "lying seems to be pathological and a form of self-preservation" and that much of Klass's opinion was based on Hudnall's own descriptions of his condition. Finally, the record contains numerous instances in which Hudnall's symptoms were less severe than those described in the opinion. So substantial evidence supports the ALJ's decision to discount that medical opinion.

Hudnall also challenges the ALJ's decision to discount the opinions of two doctors who treated him in Japan. The two physicians, Hiroyuki Ide and Yutaka Minohara, opined that Hudnall suffered from major depressive disorder, struggled with daily tasks, and could not work. The ALJ found those opinions unpersuasive because they were inconsistent with other evidence in the record. Substantial evidence supports that conclusion. The two physicians' assessments, which are not supported by treatment records, are inconsistent with the treatment notes of Hudnall's other medical providers. Further, Hudnall's own description of his ability to perform basic tasks contradicts their opinions because, for example, he stated that he could "help [his] wife and kids with homework and childcare."

2. Hudnall next asserts that the ALJ erred in finding his testimony inconsistent with the medical record. "When a claimant presents objective evidence establishing

an impairment 'that could reasonably produce the symptoms of which she complains, an adverse credibility finding must be based on clear and convincing reasons'" that are supported with "substantial evidence in the record." *Smartt v. Kijakazi*, 53 F.4th 489, 497, 500 (9th Cir. 2022) (citation omitted). Here, the ALJ explained that Hudnall's statements were inconsistent with the record because he had a gap in medical treatment and his allegations are not supported by his treating sources' mental status examinations. The ALJ discussed Hudnall's treatment history, including the fact that he improved after he received treatment following his hospitalization in 2015 and that he improved again in 2020, when he resumed treatment. The records showed that Hudnall displayed improving symptoms and normal mental assessments. The ALJ also noted Hudnall's record of dishonesty. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). Substantial evidence thus supports the ALJ's decision to reject Hudnall's testimony.

3. Hudnall contends that the ALJ erred in discounting a "function report" prepared by his wife, Miyuki Sato, without explanation, because our precedent holds that "competent lay witness testimony '*cannot* be disregarded without comment.'" *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). The Government argues, however, that under

the Social Security Administration's regulations promulgated in 2017, ALJs "are not required to articulate how [they] considered evidence from nonmedical sources using the requirements [that apply to medical opinions and prior administrative medical findings]." 20 C.F.R § 404.1520c(d). In light of those revised regulations, the Government argues, our court's precedent requiring that an ALJ give a "germane reason[]" for rejecting lay testimony should be overruled. *Molina*, 674 F.3d at 1114.

We need not decide whether those regulations constitute "intervening higher authority" that is "clearly irreconcilable" with our precedent, because any error by the ALJ in not giving a germane reason for rejecting Sato's testimony was harmless. *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003). Sato's function report provided substantially the same account of Hudnall's symptoms as Hudnall did. As explained above, the ALJ provided sufficient reasons for rejecting Hudnall's testimony as inconsistent with the record. Where the ALJ "has provided well-supported grounds for rejecting testimony regarding specified limitations, we cannot ignore the ALJ's reasoning and reverse the agency merely because the ALJ did not expressly discredit each witness who described the same limitations." *Molina*, 674 F.3d at 1121. Because Hudnall's wife's lay witness testimony was substantially similar to evidence that the ALJ appropriately rejected, "the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination." *Id.* at 1122.

4. Lastly, Hudnall contests the ALJ's conclusion that he could perform the occupations at "reasoning level 2" even though the ALJ found he "is precluded from performing complex and detailed tasks but remains capable of performing short, simple, repetitive tasks in a routine work environment." Level two reasoning requires an individual to be able "to carry out detailed but uninvolved . . . instructions." *Dictionary of Occupational Titles*, App. C. § III, 1991 WL 688702 (4th ed. 1991). The ALJ's conclusion is consistent with this level of reasoning. The ALJ found that Hudnall could not perform "complex *and* detailed instructions," which means that he could perform complex tasks that are not detailed or detailed tasks that are not complex. This finding does not conflict with following "detailed but uninvolved . . . instructions" as reasoning level 2 requires. *See id.* So we discern no error here.[1]

**AFFIRMED.**

---

[1] Hudnall explicitly disclaimed any argument that "short, simple, repetitive tasks" cannot be reconciled with reasoning level 2.

Hudnall v. Dudek, No. 23-3727

Graber, Circuit Judge, concurring:

I join the memorandum disposition in full. I write separately to explain my reading of the 2017 regulations.

The new regulations concerning the required analysis for medical sources are not clearly irreconcilable with our precedent requiring that an ALJ give "germane reasons" for rejecting lay testimony. Under those new regulations, ALJs "are not required to articulate how [they] considered evidence from nonmedical sources using the requirements [that apply to medical sources]." 20 C.F.R. §§ 404.1520c(d), 416.920c(d) (emphasis added). This provision does not mean that the ALJ need not articulate at all how nonmedical sources are assessed, a gap that our precedents fill. See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) ("[L]ay witness testimony as to a claimant's symptoms . . . cannot be disregarded without comment."). The regulations simply prescribe how an ALJ may articulate reliance, or lack of reliance, on nonmedical sources—not in the detailed and precise manner required for medical sources—but the regulations do not erase our requirement that an ALJ must say something about such sources.

The "germane reasons" requirement is not onerous. Under 20 C.F.R. §§ 404.1520c(d) and 416.920c(d), an ALJ need not follow the same rules that apply to medical sources. It is sufficient for the ALJ to state, for example, that "the

witnesses were not credible," "the witnesses did not base their comments on personal observation," or "I find the medical testimony more persuasive."

Judge Bumatay's concurrence takes one final step that I would not take. The fact that ALJs need not describe their analysis of nonmedical sources with the same stringency as medical evidence does not mean that ALJs need not say anything about nonmedical sources. Of course, the new regulations could have been written so as to make them clearly irreconcilable with our "germane reasons" precedent, but they were not. See Miller v. Gammie, 335 F.3d 889, 893 (9th Cir. 2003) (en banc) (holding that a three-judge panel may overrule prior circuit authority that is "clearly irreconcilable with the reasoning or theory of intervening higher authority"). To the contrary, the new regulations list elsewhere the limited types of evidence that do not require any analysis or explanation whatsoever. See 20 C.F.R. §§ 404.1520b(c), 416.920b(c) ("Because the evidence listed in paragraphs ((c)(1) through (c)(3) of this section is inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act, we will not provide any analysis about how we considered such evidence in our determination or decision . . . ."). Tellingly, that list does not include lay testimony.

Judge Bumatay's concurrence asserts that our "germane reasons" precedent is invented and therefore illegitimate. J. Bumatay concurrence at 2–4. Even if that assertion were correct, a three-judge panel cannot overrule this court's precedent.

2

In my view, moreover, our "germane reasons" rule follows logically from our statutory authority to review ALJs' decisions. If ALJs did not have to set forth their reasoning, it would be difficult, if not impossible, for us to conduct a full and thorough review of their decisions when, for instance, a claimant presents extensive evidence from family members and friends. See Stewart v. Sec'y of Health, Educ., & Welfare,714 F.2d 287, 290 (3d Cir. 1983) ("We require that an Administrative Law Judge do more than simply state ultimate factual conclusions. . . . Additionally, we require from the ALJ 'not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" (citations omitted)); Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) ("[A]s the Fourth Circuit has noted, 'unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" (quoting Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)) (internal quotation marks omitted)).

3

In sum, the new regulations concerning medical sources are not clearly irreconcilable with our "germane reasons" precedent governing lay testimony. Accordingly, that precedent still applies.

*Hudnall v. Dudek*, No. 23-3727
BUMATAY, Circuit Judge, concurring:

For many years, our court has imposed a judge-made rule on administrative law judges ("ALJs") in Social Security proceedings: "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). This rule was not based on any statutory or regulatory requirement—in other words, we made it up. But in 2017, the Social Security Administration revamped its regulations to contradict our "germane reason" requirement. *See* 20 C.F.R. § 404.1520c(d). Because of this regulatory change, we should have held that our "germane reasons" requirement no longer applies to Social Security claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). It's a shame we backed off jettisoning this improper rule.

I join the memorandum disposition except for its treatment of Hudnall's claim on non-medical sources.

## I.

### A.

Our precedent has required ALJs to give germane reasons for discounting the testimony of lay witnesses. *See Dodrill*, 12 F.3d at 919. Under that precedent, "competent lay witness testimony '*cannot* be disregarded without comment.'"

1

*Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (simplified). Although we have not required discussion of every witness "on a[n] individualized, witness-by-witness basis," to reject lay witness's testimony, the ALJ must point to "germane reasons" for doing so. *Id.*

But where did that rule come from? It turns out that this requirement is little more than a judicial creation that is untethered from the regulations governing Social Security proceedings—past or present. The "germane reasons" requirement traces its origins to our decision in *Dodrill. See* 12 F.3d at 919. In that case, we considered a case where the "ALJ acknowledged" testimony from lay witnesses, but "appear[ed] to have discounted all of them because they were 'based on the claimant's own assertions,' and thus, 'the conclusion that the claimant was not credible requires that the testimony and affidavits be rejected.'" *Id.* at 918 (simplified). We explained that we'd previously held that "friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." *Id.* at 918–19 (citing *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). We went on to emphasize the value of lay witness testimony before announcing a new rule, without direct citation to any authority: "[i]f the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." *Id.* at 919.

2

The closest *Dodrill* came to supporting this new concoction was through an earlier citation to *Sprague v. Bowen*'s statement that "[d]isregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." 812 F.2d at 1232 (citing 20 C.F.R. § 404.1513(e)(2) (1987)). But that citation fails to support *Dodrill*'s "germane reasons" requirement. To start, at most, § 404.1513(e)(2) directs ALJs to consider non-medical evidence presented by claimants. Back then, § 404.1513(e) simply stated that "[i]nformation from other sources may also help us to understand how your impairment affects your ability to work," with other sources including "[o]bservations by non-medical sources." 20 C.F.R. § 404.1513(e), (e)(2) (1987). So even if ALJs must consider non-medical sources, there's a big difference between an obligation to *consider* evidence and an obligation to *articulate* how that evidence was considered. Indeed, as we've recognized, an obligation to consider evidence doesn't necessarily equate to an obligation to explain that consideration. *See Molina*, 674 F.3d at 1114 ("[T]here is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." (simplified)). And nothing in the 1987 version of § 404.1513(e)(2) (which remained the same when *Dodrill* was decided in 1993), mentions, much less requires, ALJs to *articulate* how they considered non-medical evidence. So *Dodrill*'s imposition of the "germane reasons" requirement is bereft of textual

3

support. Instead, what the opinion made clear is that the judges on the panel thought non-medical evidence was important and that imposing the "germane reasons" requirement was a good idea. *See Dodrill*, 12 F.3d at 919. Those might be good reasons for the Commissioner of Social Security to adopt a new rule, but they aren't adequate reasons for this court to rewrite regulations.

Moreover, regardless of the "germane reasons" requirement's shaky origins, we should've concluded that it has been superseded by regulation. The Social Security Administration promulgated new regulations in 2017, which apply to claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017). Under the new regulations, nonmedical sources—including lay testimony from friends and family—must be considered in determining the "consistency" of "medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(c)(2); *see id.* § 404.1502(e) (defining "nonmedical source"). But under the regulations, ALJs "are not required to articulate how [they] considered evidence from nonmedical sources using the requirements in paragraph (a)–(c) in this section." *Id.* § 404.1520c(d). The "requirements in paragraph (a)–(c)" refer to ALJs' responsibilities in considering medical sources.

First, paragraph (a) governs how ALJs "consider medical opinions and prior administrative medical findings." *Id.* § 404.1520c(a). It instructs ALJs to not "give any specific evidentiary weight" to any medical opinions or prior administrative

4

medical findings.  *Id.*   Instead, it requires ALJs to consider the "supportability" and "consistency" of the medical evidence as the "most important factors."  *Id.*

Second, paragraph (b) governs how ALJs "articulate [their] consideration of medical opinions and prior administrative medical findings."  *Id.* § 404.1520c(b).  That provision requires ALJs to "articulate in [their] determination or decision how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings" in the record.  *Id.*  It also specifies that ALJs need only articulate how they considered multiple medical opinions or prior administrative medical findings from one medical source "together in a single analysis" rather than "articulate how [they] considered each medical opinion or prior administrative medical finding from one medical source individually."  *Id.* § 404.1520c(b)(1).  It also expressly directs ALJs to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings."  *Id.* § 404.1520c(b)(2).  Finally, when ALJs find that two or more medical sources "about the same issue" are "equally well-supported" and "consistent with the record," it requires ALJs to "articulate how [they] considered the other most persuasive factors" in making their decision.  *Id.* § 404.1520c(b)(3).

Third, paragraph (c) lists and describes the factors ALJs must consider when evaluating medical sources.  The factors include the "[s]upportability" of the medical sources, the "[c]onsistency" of medical sources, the medical source's "[r]elationship

5

with the claimant," the "[s]pecialization" of the medical source, and "[o]ther factors that tend to support or contradict" the medical sources. *Id.* § 404.1520c(c)(1)–(5).

Read in context, § 404.1520c(d) means that ALJs are *not required* to articulate how they consider nonmedical sources as they are required to do for medical sources. Unlike medical sources, ALJs don't need to "articulate in [their] determination or decision how persuasive [they] find" the nonmedical sources. *Id.* § 404.1520c(b). Unlike medical sources, ALJs don't need to "explain how [they] considered the supportability and consistency factors" for nonmedical sources. *Id.* § 404.1520c(b)(2). Indeed, although ALJs have a duty to consider nonmedical sources, nothing in § 404.1520c requires them to articulate how they considered the nonmedical sources. Thus, as the Social Security Administration commented in promulgating the new regulation, "aside from where [its] regulations elsewhere may require an adjudicator to articulate how [the Administration] consider[s] evidence from nonmedical sources, . . . there is no requirement for [the Administration] to articulate how [the Administration] considered evidence from nonmedical sources about an individual's functional limitations and abilities using the rules in final 404.1520c[.]" 82 Fed. Reg. at 5855.

In contrast, the Social Security Administration's new regulations also made clear that the articulation requirement was *different* for claims predating March 27, 2017. *See id.* For those claims, the regulations governing nonmedical sources

6

provide that "[t]he adjudicator generally should explain the weight given to opinions from [nonmedical] sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f)(2). The change is clear. Unlike the regulations governing claims filed on or after March 27, 2017, the regulations governing earlier claims expressly adopt an articulation requirement for consideration of nonmedical sources.

So § 404.1520c(d) exempts nonmedical sources from the requirement to articulate how evidence is considered applicable to medical sources. Given § 404.1520c(d), our "germane reasons" precedent is now at odds with Social Security regulations. Although our precedent demands explanation for the rejection of each lay witness's testimony, the governing regulations now expressly allow ALJs to discount nonmedical evidence without any duty to explain. *See Molina*, 674 F.3d at 1114 (recognizing that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision" (simplified)). Ordinarily, only an en banc court may overrule Ninth Circuit precedent. *See Miller v. Gammie*, 335 F.3d 889, 892–93 (9th Cir. 2003) (en banc). But that is not the case when our precedent's "reasoning or theory . . . is clearly irreconcilable with the reasoning or theory of intervening higher authority." *Woods*

7

*v. Kijakazi*, 32 F.4th 785, 790 (9th Cir. 2022) (simplified). And amended Social Security regulations may qualify as "intervening higher authority." *Id.*

The new Social Security regulations dealing with the treatment of nonmedical sources constitute an intervening higher authority. Under the Social Security Act, "the Commissioner has wide latitude 'to make rules and regulations and to establish procedures . . . to carry out [the statutory] provisions,' in particular regulations governing 'the nature and extent of the proofs and evidence . . . to establish the right to benefits.'" *Id.* (quoting 42 U.S.C. § 405(a)); *see also Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) (observing the Commissioner's "exceptionally broad authority" to promulgate evidentiary rules, which may be set aside only if they exceed the agency's statutory authority or are "arbitrary and capricious"). Because the new regulations covering nonmedical evidence fall within the Commissioner's broad authority and nothing shows that they are "arbitrary and capricious," they are the new governing law.

The revised Social Security regulations are clearly irreconcilable with our precedent requiring "germane reasons" to reject lay witness testimony. Thus, our "germane reasons" precedent should no longer apply to claims filed on or after March 27, 2017, and in considering such claims, ALJs shouldn't need to explain their reasons for discounting evidence from nonmedical sources, such as the claimant's friends and family.

**B.**

With the new governing framework in mind, the issue here is straightforward. Hudnall's wife provided a questionnaire describing his limitations. Although the ALJ summarized her statement, Hudnall faults the ALJ for not providing reasons for rejecting the limitations she described. Hudnall argues that it was reversible error to fail to give germane reasons for rejecting this lay evidence. But because ALJs "are not required to articulate how [they] considered evidence from nonmedical sources," 20 C.F.R. § 404.1520c(d), the ALJ did not err in discounting the spousal evidence without explanation. We should've taken this opportunity to recognize that our "germane reasons" requirement no longer applies to claims filed on or after March 27, 2017.